## JUANITA PITTMAN v. C. T. PITTMAN

14 So. (2nd) 671                          June Term, 1943
July 24, 1943                             Division A
Rehearing Denied November 2, 1943

*William J. Pruitt,* for appellant.
*Sydney L. Weintraub,* for appellee.

TERRELL, J.:

Appellee sued appellant for divorce on the ground of desertion. He also prayed that he be awarded the custody of their minor child, Charles Joseph Pittman, about five years old. The appellant answered the bill of complaint wherein she denied the material allegations thereof and prayed that the custody of their minor child be awarded to her mother, Mrs. Mae Ritzema. On final hearing, the chancellor granted the complainant his divorce and awarded the custody of the minor child to him to be boarded in the home of his sister Mrs. Jim Willie Lowry. The defendant was denied the right to visit the child at any time. This appeal is from the final decree.

On consideration of the record, we think the final decree may be affirmed as to the divorce but as to the custody of the minor child and the visitation of it by the mother (defendant), it should be reversed. It is shown that these parties were married in Alabama in 1936, lived the hawk and buzzard way from scratch, separated repeatedly and neither showed a disposition to make a go of the marital state. They turned the child over to its maternal grandmother before it

was eight months old and she and her husband kept it until this suit was brought.

This Court has repeatedly approved the doctrine that when confronted with the question of awarding the custody of a minor child, it will be guided by what is shown to be the best interest of the child. The chancellor awarded the custody of the child to the father to be boarded with his sister in Miami, who is shown to be a very respectable lady but a stranger to it. At the time he made this award, he was faced with the alternative of awarding it to the grandmother who is shown to be a law abiding, religious, God-fearing person who owns and lives on a modest farm with the grandfather near Wauchula, Florida, who voluntarily took it as an infant and have been solely responsible for its nurture and support. They have become attached to it and are willing to continue that responsibility.

Now if the interest of the child is the first consideration in awarding its custody, as between a stranger, though a very respectable lady, and the grandmother, who is equally as respectable and has shown her devotion to it, the question of what is the best interest of the child would not seem difficult to answer. The prospect of growing up in a modest farm home tutored by a law-abiding, intelligent, religious guardian is one of the greatest opportunities that ever fell athwart the path of a five year old boy. Its potentialities far surpass those of living in a boarding house even though it be operated by Emily Post next door to Utopia.

The modest farm home is the natural sanctuary and breeding ground for democratic theory as we understand it. To grow to maturity on a modest farm, to have frequent contact with the soil, the animals, the seasons, the crops, to husband them and learn to cope with the various and sundry problems that constantly arise, to participate with others in community betterment imbues one with a degree of personal responsibility and self reliance that no other experience imparts. There is no better example of democracy in the making. It is somewhat ironic that in Maine the product of this crucible comes out republican and in Georgia, democratic, but in either event it finds refuge in the Constitution

as guide for its faith and practice. So far as the record reveals, it has never evolved a socialist, a communist, or a fascist.

Ever since man stood flatfooted and walked upright, he has been prone to trespass on the liberty of his fellow man. In his untamed state, he has always been the rampant autocrat. Energize him with intelligence, self discipline, a wholesome respect for the liberty of others and then quicken him to adjust readily to correct patterns of social development and you make of him the paragon of democracy. Socrates is alleged to have proclaimed that the "undisciplined life is not worth living." So democracy is self discipline, a willingness to submit to reasonable restraints and give up some portion of personal liberty when essential to advance the common good; in other words, to accept graciously the responsibility that liberty carries with it.

If we may judge by the product released, no discipline disciplines more effectively than a youthful apprenticeship on a modest farm where the dignity of labor with the hands is impressed by precepts that stick. The constant call to aid a neighbor over the hump, to rid the dog of fleas, to break a spirited colt, to drench a salt sick calf, to see that all domestics are properly fed and protected against the inclemencies of the weather, to learn the chemistry of the soil, the significance of the moon's phases, and to share responsibility with others in the multitude of enterprises that constantly arise engenders a fund of knowledge and a spirit of self discipline that no other experience equals. Jefferson characterized each year of actual experience as equal to three years of book reading. It makes adherence to the Bill of Rights a habit rather than a rule of thumb.

We think that the chancellor overlooked that potentiality for the minor in this case. It is accordingly our opinion that its custody should have been awarded to the grandmother, Mrs. Mae Ritzema, with leave to the father to visit it as the court may direct and to contribute such amounts to its support and education as he (Court) may deem proper.

It is also our view that the mother should be permitted to visit the minor on equal terms with the father. If the

record is to be given face value, neither parent is a fit guardian for it but taken as a whole, we do not find one to be better or worse than the other. When this is the case, the law will stir them in their own juice and salt them alike. It was error to deny one the right of visitation that was granted to the other.

It follows that the decree appealed from is affirmed as to that part granting the divorce but as to the custody of the minor child and the right of visitation by the mother, it is reversed with directions to decree as directed in this opinion.

Affirmed in part. Reversed in part.

BUFORD, C. J., CHAPMAN and ADAMS, JJ., concur.