68 So.2d 821 (1953)
REID
v.
REID.
Supreme Court of Florida. Special Division B.
December 1, 1953.
Rehearing Denied January 4, 1954.
Franks & Gordon, Miami, for appellant.
Carr & O'Quinn, Miami, and J. Ben Watkins, Tallahassee, for appellee.
THOMAS, Justice.
The appellee was granted a divorce from appellant and an appeal was taken to this Court. No question now presented for determination constitutes a challenge to the divorce itself; only ancillary matters are involved.
The master who heard the testimony concluded that the appellant was worth approximately one hundred thousand dollars. He recommended that the appellant be required to convey to the appellee his interest in property held as an estate by the entireties, to deliver certain personal property, to pay alimony of two hundred dollars monthly, and to pay the costs and attorneys' fees.
Appellant's attorney dictated into the record an offer of a property settlement and this offer was incorporated in the master's report. We consider the offer highly important in view of the attacks made upon the decree. The appellant proposed to pay the appellee twenty thousand dollars, five thousand in cash and the remainder in deferred payments, to convey to the appellee the personal property and his interest in the real property. As an alternative he offered appellee the use of the house, two hundred dollars monthly as alimony, and he agreed to pay the court costs, which according to the record, included a fee for the appellee's attorneys.
*822 When the master's report was tested by the exceptions of appellant the chancellor accepted the recommendation with respect to fees, but he rejected the recommendations about the alimony, and also the "property settlement", except the conveyance of the interest in the realty. He commanded the appellant to convey to the appellee his interest in the estate by the entireties, to transfer to appellee the personal property, to pay appellee the sum of $20,000, and to pay stated amounts to the appellee's attorneys and the master. The chancellor also enjoined the appellant from hypothecating or disposing of any of his property until further order of the court.
The first question may be simply stated: Did the chancellor have the power to command the appellant to convey his interest in the property which was held as an estate by the entireties at the time the decree was entered?
We have so frequently dealt with such an estate that there is no occasion to pause here to repeat our definitions. It is sufficient to say that the interests of the parties, who must have been man and wife for such an estate to have been created, became crystallized by a dissolution of the union. At once they became "tenants in common." Sec. 689.15, Florida Statutes 1951, and F.S.A., each owning an undivided one-half interest in the property.
Clearly, under Sec. 65.08, Florida Statutes 1951, and F.S.A., the chancellor had the power to order payment of alimony "in a lump sum." He had also the power to require the conveyance by the husband to the wife of real property owned entirely by the husband. See Bezanilla v. Bezanilla, Fla., 65 So.2d 754. If the chancellor can order the conveyance of property the husband owns outright there is no reason to hold that he cannot order the man to convey to the woman his undivided interest in property they own as tenants in common.
The factual situations in Strauss v. Strauss, 148 Fla. 23, 3 So.2d 727, and Pollack v. Pollack, 159 Fla. 224, 31 So.2d 253, should cause no complications of the matter now being determined. In the first of these cases the chancellor had attempted to coerce the wife to convey to the husband her interest in an estate the parties had held in entirety on the theory that the property had been purchased with the husband's funds and that he had dominion over it. The court referred to the familiar principle that where an estate by the entireties is thus created the presumption arises that a gift was intended and the court held that there was nothing in the record to overcome that presumption. In the instant case the husband has been required to settle property matters with the wife at the conclusion of the marriage relationship which is quite different.
In the second cited case the court simply decided that when the chancellor had allotted homestead property held as an estate by the entireties to the continued shelter of the wife and minor children, the husband as tenant in common could not bring suit for partition which would have had the effect of disturbing or destroying the home provided for the children and their mother, and that from the very nature of the situation partition was rendered "premature." In stating that "there might be substance to his contention"  that partition should be allowed  if the court had been "confronted with the divorce and no more" the court merely meant that in the absence of children or dependency of the wife, or some like condition constituting need for a form of trust there might be no occasion to keep the property in the status of tenancy in common.
The next attack upon the decree is directed particularly to the injunctive feature. Evidently appellant takes the position that the injunction defeats the very purpose of the decree because if he is prevented from selling or pledging his property, he cannot comply with the terms imposed. This contention is not justified by the record as we shall see from further examination. At the time the chancellor considered and determined the exceptions to the master's report, he observed that he was inclined to permit payment of $20,000 in alimony in "reasonable installments, but only if future *823 payments [should] be adequately secured." Following this announcement he heard testimony about the financial circumstances of the parties and during the hearing he said "I am only interested in one thing. I want to be sure, beyond and to the exclusion of every reasonable doubt, that the $20,000 is paid." Meanwhile he had suggested that counsel try to reach an agreement about the manner of paying the cash alimony allowance.
Apparently nothing to this end was done for a period of six weeks so the chancellor when entering the decree, after ample time had been allowed either to supply the money or the security, incorporated the provision for the injunction. From the whole record we get the definite idea that the restraining order was not intended to defeat the decree itself but, on the contrary, to aid it. We have no doubt that the injunction will be dissolved once the appellee receives the award, or security for its payment is provided.
There is no real dispute about the amount of the sum awarded as alimony but only the manner in which it should be paid. The appellant had abundant opportunity to perform his original proposition of discharging the obligation by paying a certain amount in cash and the remainder in installments adequately secured. The record convinces us that this could have been readily accomplished, and we do not find support for the contention now made that the requirement of payment for the whole amount at once would be ruinous to the appellant.
The remaining two questions present the reasonableness of the attorneys' and master's fees. The fee allowed for the attorneys was far below the minimum fixed by expert witnesses on the subject, and the services rendered seemed to measure up to the standards set in Provus v. Provus, Fla., 44 So.2d 656, so we approve the amount fixed by master and chancellor.
The issues were relatively simple and the report of the master does not reveal that he considered it necessary to make any extensive study of the law. Taking into account the time devoted to hearing the case and the nature of the report made, we think the master's fee should be reduced to $500.
With the exception of the amount fixed as compensation for the master, the decree is affirmed.
ROBERTS, C.J., and TERRELL and DREW, JJ., concur.