287 So.2d 740 (1973)
Robert Emmet VAN METER, Sr., and Lillian Van Meter, Appellants,
v.
Charles Martin MURPHY et al., Appellees.
No. S-424.
District Court of Appeal of Florida, First District.
December 11, 1973.
Rehearing Denied January 29, 1974.
*741 George B. Stallings, Jr. of Stallings & Marr, Jacksonville, for appellants.
Charles Martin Murphy, and Robert J. Horne, Jacksonville, for appellees.
SPECTOR, Judge.
Appellant seeks reversal of an interlocutory order awarding temporary custody of minor children to the Division of Family Services, a state agency, for placement in a foster home.
Appellant, Robert Emmet Van Meter, Sr., and his wife are the paternal grandparents of the children, ages four and five, whose custody is involved. The children's natural parents have been shown to be clearly unfit, the mother having distinct mental problems which would have a detrimental effect on the children; and the father is wholly unfit, being in jail for having sexually molested two of his nieces. There seems to be no question that the children are proper subjects for custodial placement.
In response to appellees' petition for custody of the children here involved, the lower court rendered the order now on appeal and committed the children to the temporary care, custody and control of the appellee state agency for foster home placement. The said order of custody was entered after several hearings over a period of time during which the natural mother spirited the children away during a visit from the home of the paternal grandparents where they had been staying pursuant to agreement or acquiescence of both natural parents. Later the children were placed in the custody of the state, and again while visiting them the mother abducted them and kept them hidden for almost a year but ultimately returned the children.
Upon learning of their return, the paternal grandparents petitioned for custody of the children as did the maternal grandparents. In due course, a hearing was had and the court placed the children temporarily with the state for foster placement.
At the time of the entry of the custody order reviewed herein, the trial court did not have the guiding benefit of a new amendment to the juvenile law that has since been enacted, Chapter 73-231, Section 16, which amends Section 39.10, Florida Statutes, F.S.A., by adding a new subsection (5) thereto which reads:
"(5) In all cases where one or both of the parents of a child is unable or unfit to be awarded custody and where the child has a close relative who is fit, ready, able and willing to be awarded such custody, the court shall award the custody of the child to such close relative *742 and not to any foster home or agency of the state."
Since the above enactment became effective during the pendency of this appeal, we are bound to apply the new law even though it was not extant at the time of the judgment being reviewed. Florida East Coast Ry. Co. v. Rouse, 194 So.2d 260 (Fla. 1967); Ingerson v. State Farm Mutual Automobile Ins. Co., 272 So.2d 862 (Fla.App. 1973); R & R Lounge, Inc. v. Wynne, Fla.App., 286 So.2d 13, Opinion dated November 27, 1973; and State v. Lee, Fla.App., 286 So.2d 596, Opinion dated November 27, 1973.
Under the new provisions of Section 39.10(5), Florida Statutes, F.S.A., 1973, there is no authority to award custody to a foster home where there are relatives fit ready, willing and able to undertake such custody. It is clear from the evidence adduced below that appellants are able to exercise proper custody and care of these children and their prosecution of this appeal attests to their willingness to do so.
The theme of the new statute has been articulated in the annals of the jurisprudence of this state before, and perhaps it is only now being codified because of the recent trend toward institutionally controlled custody in preference to that of remote blood relatives.
Justice Terrell in Pittman v. Pittman, 153 Fla. 434, 14 So.2d 671, stated the dichotomy thusly:
"Now if the interest of the child is the first consideration in awarding its custody, as between a stranger, though a very respectable lady, and the grandmother, who is equally as respectable and has shown her devotion to it, the question of what is the best interest of the child would not seem difficult to answer. The prospect of growing up in a modest farm home tutored by a law-abiding, intelligent, religious guardian is one of the greatest opportunities that ever fell athwart the path of a five year old boy. Its potentialities far surpass those of living in a boarding house even though it be operated by Emily Post next door to Utopia."
Reversed and remanded for further proceedings.
WIGGINTON, Acting C.J., and JOHNSON, J., concur.