300 So.2d 54 (1974)
In re the Interest of R.J.C.
No. U-338.
District Court of Appeal of Florida, First District.
April 9, 1974.
Rehearing Denied May 8, 1974.
*55 Leo A. Thomas of Levin, Warfield, Graff, Mabie & Rosenbloum, Pensacola, for appellant.
Joseph C. Rubel, of Hahn, Reeves, Barfield & King, Pensacola, for appellee.
JOHNSON, Judge.
The maternal grandmother of the referenced minor child seeks review and reversal of the trial court's Order of Permanent Commitment declaring said child to be dependent and permanently committing said child to the Children's Home Society of Florida, a licensed child placing agency, for subsequent adoption.
*56 Via our Order denying the Home Society's motion to quash this appeal and our subsequent Order denying a petition for rehearing, we have previously disposed of the Society's contention as propounded both in the above motions and again in its brief, that the maternal grandparents have no standing to appeal from the Order of Permanent Commitment. As will be more fully developed elsewhere in this opinion, we find sufficient language in Chapter 39 of the Florida Statutes, F.S.A., as amended in 1973 by Chapter 73-231, Laws of Florida, to illustrate the legislative intent to provide close relatives of children adjudged to be dependent a legal means by which to challenge orders of permanent commitment.
The material facts of this case are not in dispute. On September 4, 1972, the minor child herein was born out of wedlock to the daughter of the appellant herein. Since that date and until approximately the middle of June, 1973, the appellant's daughter and grandchild lived with appellant and the rest of appellant's family in Iowa. The mother and child then left for parts unknown and sometime thereafter arrived in Pensacola, Florida. On August 30, 1973, the mother of the child, as well as the purported father of the child,[1] signed and delivered to the Home Society a form entitled "Surrender of Child to Licensed Child Placing Agency." The purpose of said form was to obtain consent from the mother and the father to the entry of an order permanently committing the child to the Children's Home Society for subsequent adoption. On the same date, August 30, 1973, the Home Society filed a petition with the Juvenile Division of the Circuit Court in and for Escambia County to declare said minor child dependent.
The following weekend, the maternal grandmother of the child came to Pensacola from Iowa for the purpose of reversing the prior actions of her daughter. She spoke with her daughter and asked her to meet her at the Children's Home Society on September 4, 1973, to see if they could get the child back. The daughter never met her at the agency and evidently she left town. The Home Society offered to wait until October 2, 1973, before processing the papers signed by the minor child's parents in order to give appellant ample time to locate her daughter. Apparently, the daughter was never located, as the agency never heard from her or the purported father.
Thereafter, the maternal grandmother filed an answer and a counterpetition to the Home Society's petition to declare the minor child dependent. The answer denied that the child was dependent and the counterpetition requested, in the alternative, that the child be declared dependent and placed in the custody of its maternal grandparents. At the hearing on the petition, the trial judge stated the issue to be "whether or not a relative may come in and set aside the consent of an unwed mother." When the Home Society was asked about its position on whether, if the child were placed with that agency, the grandparents would be able to adopt, the following answer was given: "We feel any plan to place with relatives should be made before coming to an agency, if this is what the mother wished to do." The Home Society representative further testified that "the mother of this child requested we place her for adoption, and I am not free to make any other plan." She refused to answer a question concerning the fitness of the maternal grandparents for custody on the grounds that this was not an issue. The issue, contended the agency, was "whether or not the mother has the right to release the child for adoption." Testimony was taken from the maternal grandmother and she unequivocably stated that she loved the minor child and that she desired and was willing and able to take the child and place it in her home.
*57 The trial court took the matter under advisement and, on the following day, rendered its Order of Permanent Commitment declaring the child to be dependent, permanently committing the child to the Children's Home Society for subsequent adoption and permanently depriving the parents and all other persons of all rights to the child. The appellant's motions for rehearing and/or relief from judgment were denied.
This Court is now faced with two issues: (1) Is this minor child a "dependent" child within the meaning of the Florida Statutes, and (2) if so, did the Home Society err in its contention and did the trial court err in its final Order by holding that the maternal grandparents of the child should not be awarded custody? We answer both of these questions in the affirmative.
As to the first issue, Chapter 73-231, Section 2, Laws of Florida, which amends § 39.01(10), Florida Statutes, defines a "dependent child", inter alia, as a child who "is surrendered to the division of family services or a licensed child placing agency for purposes of adoption." (§ 39.01(10)(g)). Thus, from the facts above recited, it is clear that the referenced child herein falls within the statutory definition of a "dependent child".
This, however, is as far as we intend to go in agreement with the court below and the contentions of the Home Society. In custody proceedings the welfare and best interests of the child are of paramount importance. The welfare of the child is the dominant and controlling consideration in any custody proceeding. It overrides all other considerations, even the natural rights of a parent. In determining the issue of the child's welfare and best interests, the trial court is vested with broad, though not unbridled, discretionary powers. A determination by the trial court as to the custody of a child may be set aside where the determination constitutes an abuse of discretion. With these guiding principles in mind, we turn now to the statutory law and case law of this State as applied to the particular facts of this case.
As noted above, Chapter 39, of the Florida Statutes was amended by the Legislature with the enactment of Chapter 73-231, effective July 1, 1973. The changes made in the existing statutes clearly reflect the Legislature's concept of what would, in most cases, be in the best interest of children brought to the attention of the courts. First, we note that the new § 39.11(2)(d) provides that when a child is adjudicated to be a dependent child, the court has the power to permanently commit the child to a licensed child placing agency for subsequent adoption if the parent or parents have voluntarilv executed a valid written surrender of the child for subsequent adoption and if the court finds that it is manifestly to the best interest of the child to do so. Thus, the Home Society's contention that the custody issue ended when a voluntary consent to surrender was executed by the parents is clearly negated by the wording of the statute itself. As always, the welfare of the child is the determining consideration in custody proceedings, regardless of the manner in which the child comes to the attention of the court.
Looking further to the new amendments, we find what we perceive to be perhaps the dominant theme regarding dispositions in cases involving children who are declared dependent, delinquent or in need of supervision. Section 16 of Chapter 73-231 amended § 39.10 by adding a new subsection (5) which reads as follows:
"In all case where one or both of the parents of a child is unable or unfit to be awarded custody and in which the child has a close relative who is fit, ready, able and willing to be awarded such custody, the court shall award the custody *58 of the child to such close relative and not to any foster home or agency of the state."
The Home Society contends that this section is not applicable to the facts now before this Court for the reasons that the Home Society is not a "foster home or agency of the state" and that the Order of Permanent Commitment was not based on the inability or unfitness of the parents, but, rather, on the voluntary surrender of the child for subsequent adoption. We find these distinctions to be without merit. A parent who surrenders his or her child for adoption is obviously unable, for one reason or another, to maintain the child. Also, it is our interpretation of the statute's intent that the Home Society should be considered a temporary foster home or, at the very least, an "agency of the state". See § 39.01(14). Although the above-cited amendment to § 39.10(5) did not become effective until July 1, 1973, its intent; i.e., that a child's best welfare is, more often than not, better served by awarding custody to a close relative, rather than to an institution, has often been recognized by the courts of this State. In Van Meter v. Murphy, 287 So.2d 740, 742 (Fla.App. 1st, 1973), this Court, addressing itself to the new amendment, recently stated:
"Under the new provisions of Section 39.10(5), ... there is no authority to award custody to a foster home where there are relatives fit, ready, willing and able to undertake such custody... .
"The theme of the new statute has been articulated in the annals of the jurisprudence of this state before, and perhaps it is only now being codified because of the recent trend toward institutionally controlled custody in preference to that of remote blood relatives."
Finally, we come to the Home Society's contention that the natural parents have the legal right to plan for the welfare and future of their children, and therefore the child's grandparents should never be considered for custody purposes if the parents voluntarily surrendered the child to a child placing agency for subsequent adopton. Such a contention flies in the face of the amendments mentioned above, as well as the overriding purpose of all statutes relating to child custody, which is to achieve a situation which will promote the welfare and best interests of the child in question. While we would certainly agree that a natural parent has a natural right to bring up and prepare for the future of his or her child, once a parent has relinquished, abandoned, or forfeited that right for whatever reason and once the child has been lawfully declared to be a dependent child, it becomes a ward of the state and the court is then vested with the power to do those things which appear to be in the best interest of the child. The language contained in the case of Pendarvis v. State, 104 So.2d 651, 652 (Fla.App. 1st, 1958), is most pertinent to the situation now before us.
"The question of who is a proper person to have the care and custody of such child is not one that can be directed by the whim, fancy or caprice of those who had the responsibility and right under God's, nature's, and man's law to nurture, care for, and support their off-spring, and who by their own making have forfeited that right and cast the responsibility upon others."
While we do not mean to imply that those parents who make the decision to place their child for adoption are acting solely without responsibility or on the basis of "him, fancy or caprice", it is plain that the natural rights of a parent are not absolute, but are always subject to the ultimate welfare of the child, which is the polestar or controlling principle to be observed.
Applying the above principles to the record before us in the present appeal, we must reverse the Order of Permanent Commitment rendered by the trial court. *59 Said Order constitutes a rank and gross abuse of discretion which cannot be permitted to stand uncorrected. We have carefully reviewed the counterpetition, the testimony and other evidence contained in the record and it is our conclusion that the maternal grandparents should be awarded custody of the referenced minor child, who spent the first ten months of her life in the home of said grandparents. The record illustrates that the grandparents are able and fit to exercise proper care and custody of this child, and their intervention in the proceedings below and prosecution of this appeal attests to their willingness to do so.
We do not mean to imply by this decision that close relatives would have absolute priority in all matters of custody. As always, the best interests of the child is the controlling factor. Nor do we mean to imply that a close relative would be able to rescind an effected adoption. This Court is aware of recent cases wherein the natural parent or parents have attempted to rescind their prior action of relinquishing their child, and we refute any interpretation of the recent amendments to Chapter 39 or this opinion which would authorize close relatives to make similar attempts after the adoptive parents have gone through legal procedures to finalize the adoption. However, no such situation exists in the present case inasmuch as appellant intervened at the initial or preliminary stages of the proceedings.
In conclusion, we find that the welfare and best interests of this child will be best served by placing her in the custody of her maternal grandparents. The appellant's counterpetition should have been granted.
Reversed and remanded for further proceedings consistent with the views expressed herein.
SPECTOR, Acting C.J., and BOYER, J., concur.
NOTES
[1] There is some conflict in the record as to whether the person signing said form was the actual father of the child.