330 So.2d 833 (1976)
Gerald HAUSMAN, Appellant,
v.
Renee HAUSMAN, Appellee.
No. 75-869.
District Court of Appeal of Florida, Third District.
April 13, 1976.
Rehearing Denied May 12, 1976.
*834 Dubbin, Schiff, Berkman & Dubbin, Podhurst, Orseck & Parks, Miami, for appellant.
Heller & Kaplan, Miami, for appellee.
Before PEARSON, HENDRY and HAVERFIELD, JJ.
PER CURIAM.
Appellant, Gerald Hausman, seeks reversal of those provisions of a dissolution of marriage judgment awarding his former wife, Renee, lump sum and permanent periodic alimony and attorney's fees and directing him to pay her $17,500 for certain stocks and bonds.
On April 11, 1975 the four year marriage between Renee and Gerald Hausman was dissolved. Renee was awarded, inter alia, $10,000 as lump sum alimony, $1,000 alimony per month for one year, $600 monthly thereafter as permanent periodic alimony and $7,500 for a reasonable attorney's fee. Additionally, Gerald was ordered to pay Renee $17,500 and she in exchange would endorse over to him the Greyhound stock and Central Railroad of New Jersey bonds on which he had indemnified her against loss.
Gerald principally contends the chancellor abused his discretion with respect to the amount of the awards of lump sum and permanent periodic alimony. We cannot agree.
The primary criteria to be used in establishing the amount of alimony is the husband's ability to pay and the needs of the wife, taking into consideration the standard of living enjoyed by the parties during the marriage. Firestone v. Firestone, Fla. 1972, 263 So.2d 223; Hagen v. Hagen, Fla. App. 1975, 308 So.2d 41.
Appellant does not take issue with the needs of appellee and admits to the lavish standard of living established by him during the marriage. He argues that he is financially unable to pay the alimony awards because his liabilities now exceed his assets. It appears that although appellant's 1974 gross income was in excess of $164,000, in September 1974 because of his debts, he voluntarily agreed to deposit all of his income from whatever source into an account to be controlled by his brother-in-law and from this account he consented to withdraw only $1,160 per month for all of his living expenses. Appellee alleged that this agreement, which was drawn up at about the time she instituted the current proceedings, is merely a device to avoid paying alimony. It is apparent that the chancellor who heard all the testimony and reviewed the documentary evidence presented by the parties concluded that the large reduction of appellant's income for the most part was brought about voluntarily and not out of necessity with the purpose of avoiding his obligation to pay alimony. We find there is ample evidence to sustain this conclusion. Cf. McRae v. McRae, Fla. 1951, 52 So.2d 908; Bergh v. Bergh, Fla. App. 1964, 160 So.2d 145; Gamse v. Gamse, Fla.App. 1974, 291 So.2d 620. Further, where the head of a family by furnishing money over a period of years establishes a certain financial standard of living, in the absence of sufficient evidence to the contrary, it may be inferred that he has the *835 financial ability to enable him to continue to maintain his spouse in substantially the same manner of living. See Silvers v. Silvers, Fla.App. 1973, 274 So.2d 555 and cases cited therein. In the final analysis the following quote from Firestone v. Firestone, supra, at 227 appears to be dispositive of this issue of alimony:
"Unfortunately, when the dance of marriage has reached its `fine' and the time arrives to pay the fiddler, the predilections for unrestrained pleasures, more often than not, then turn into hues and cries of poverty and despair. Nonetheless, cloth must be cut to fit the pattern, and if excessive indulgences, as a customary norm, accompany private wealth they may very well establish a pattern."
We also reviewed appellant's remaining points on appeal concerning the stocks and bonds and attorney's fee and find no reversible error.
Affirmed.