345 So.2d 388 (1977)
Clarence N. BEHN, Appellant,
v.
Mae Ola TIMMONS, Appellee.
No. DD-423.
District Court of Appeal of Florida, First District.
May 3, 1977.
Seymour H. Rowland, Jr., Ocala, for appellant.
Ben Daniel, Jr., Ocala, and John P. Thurman, Dunnellon, for appellee.
RAWLS, Acting Chief Judge.
Appellant-natural father appeals an order granting custody of his two minor children to the maternal grandmother subject to his reasonable right of visitation.
Two children (girls) were born of the marriage between Clarence N. Behn (appellant-father) and Barbara N. Behn (mother). The parties were divorced with custody being awarded to the mother. Subsequently, the mother died. During her last illness, the mother delivered the children to the father who had them in his custody until shortly prior to the mother's death, at which time the maternal grandmother arranged *389 for another of her daughters to remove the children from the father's home to the home of the maternal grandmother. After the death of the mother, appellant filed a petition for writ of habeas corpus which, after lengthy hearings, the trial court entered the instant order appealed.
This record wholly fails to disclose that the polestar test of "best interest of the children" warrants the drastic remedy of depriving the natural father of his natural right to rear his children in his home.[1] The trial court did not in any respect find the father to be unfit, although it did find that "the children need a younger mother figure".
Busbee v. Weeks, 80 Fla. 323, 85 So. 653 (1920), is on point. There, the father of a newly born female child, whose mother died in bearing the child, permitted the maternal grandparents to take his child into their home. When the child reached the age of four years, the father, by petition for writ of habeas corpus, sought custody of his child. The trial court in Busbee awarded custody to the Maternal grandparents with visitation privileges to the father. In reversing, Justice Whitfield, speaking for the Supreme Court, stated:
"At common law the father has the paramount right to the custody and control of his legitimate minor children, subject only to lawful regulations for the benefit of the children. Porter v. Porter, 60 Fla. 407, 53 So. 546, Ann.Cas. 1912C, 867; Hernandez v. Thomas, 50 Fla. 522, 39 So. 641, 2 L.R.A., N.S., 203, 111 Am.St.Rep. 137, 7 Ann.Cas. 446; Miller v. Miller, 38 Fla. 227, 20 So. 989, 56 Am.St.Rep. 166.
"In this case the legal rights of the father not having been relinquished or forfeited, and his ability to take proper care of the child appearing, the custody should be awarded to him on the showing made."
In Busbee, the father lived with his parents and three other children. Here, the father's parents live with him and two other children. The home conditions of the maternal grandmother and her husband in which other children and grandchildren are present are very similar to the home conditions of the father.
We cannot and should not lose sight of the basic proposition that a parent has a natural God-given legal right to enjoy the custody, fellowship and companionship of his offspring. This is a rule older than the common law itself. State ex rel. Sparks v. Reeves, 97 So.2d 18 (Fla. 1957). And, except in cases of clear, convincing and compelling reasons to the contrary, a child's welfare is presumed to be best served by care and custody by the natural parent. In Re Vermeulen's Petition, 114 So.2d 192 (Fla. 1st DCA 1959).
The order appealed is reversed with directions that the trial court award custody of the two minor children to their natural father.
SMITH, J., concurs.
ERVIN, J., dissents.
ERVIN, Judge, dissenting.
The right of a father to rear his children in his home must be balanced by this court by two other important considerations. The first is the reluctance of an appellate court to reverse a chancellor who has had an opportunity to observe the witnesses and has used his best judgment to do equity between the parties. Justice v. Van Eepoel, 132 So.2d 407, 409 (Fla. 1961):
"Our own personal reactions at the appellate level are not the standards by which *390 our judgment must be guided. The rule is that unless we can conclude from our study of the record that the chancellor has acted arbitrarily or has in any fashion abused his discretion in making provision for the custody of minor children, we are bound by the presumed correctness of his judgment."
Secondly, the welfare of the children is still of paramount importance. E.g., Green v. Green, 137 Fla. 359, 188 So. 355 (1939); Mehaffey v. Mehaffey, 143 Fla. 157, 196 So. 416 (1940); Pacheco v. Pacheco, 246 So.2d 778 (Fla. 1971). The able trial judge's concern here is the fact that the father has a trucking operation and cuts and bales hay during the season. From May until October he may work seven days a week. The children would be left in the care of the father's parents, a 60-year old grandmother and an 85-year old grandfather, both of whom are not in the best of health. The maternal grandmother, on the other hand, is 46 and her husband is 61. The investigating social worker testified their home appeared larger (though with the same number of rooms), more attractive and cleaner. As to the behavior of the children during her visit, the investigator testified:
"A. They were sitting on the couch next to Mrs. Timmons and they were both clean and very neatly dressed. They  the little one snuggled up to Mrs. Timmons and fell asleep on her lap while we were sitting there talking, and the older one was  appeared to be very happy and content and she went over and acted like she may have been a little jealous of the other one and tried to hug Mrs. Timmons, too.
Q. Were they unruly or rude?
A. No, they were very polite and well behaved."
Under similar circumstances, the Florida Supreme Court directed the chancellor to award custody of the divorced parties' minor child to the maternal grandmother in Pittman v. Pittman, 153 Fla. 434, 14 So.2d 671 (1943). Observe the following colorful language by Justice Terrell:
"Now if the interest of the child is the first consideration in awarding its custody, as between a stranger, though a very respectable lady, and the grandmother, who is equally as respectable and has shown her devotion to it, the question of what is the best interest of the child would not seem difficult to answer. The prospect of growing up in a modest farm home tutored by a law-abiding, intelligent, religious guardian is one of the greatest opportunities that ever fell athwart the path of a five year old boy. Its potentialities far surpass those of living in a boarding house even though it be operated by Emily Post next door to Utopia." 14 So.2d at 671.
The order denying the petition of the father was not final. It allowed him six months from September 24, 1976, to refile or renew his petition. The six month period has expired and it seems proper to allow the chancellor to reconsider the situation. Should there be a change in circumstances and the father able to spend the time with the children that they require, or if should someone in his home be able to care for them, then permanent custody could be given to the father. I would affirm.
NOTES
[1] Cf. The following cases hold that a grandparent, whose child is deceased, is not entitled to be awarded visitation rights with a grandchild: Parker v. Gates, 89 Fla. 76, 103 So. 126 (1925); Lee v. Kepler, 197 So.2d 570 (Fla. 3rd DCA 1967); Rodriguez v. Rodriguez, 295 So.2d 328 (Fla. 3rd DCA 1974); Sheehy v. Sheehy, 325 So.2d 12 (Fla. 2nd DCA 1975); and Roberts v. Davis, 328 So.2d 879 (Fla. 2nd DCA 1976). Although the author of this opinion is not in accord with the foregoing principle of law expressed, it is logical that if a grandparent is not entitled to be awarded the right of visitation, such grandparent certainly is not entitled to be awarded custody where the trial court does not find the surviving natural parent to be unfit to have custody.