400 So.2d 75 (1981)
Patrick J. GORMAN, Appellant,
v.
Eileen E. GORMAN, Appellee.
No. 80-338.
District Court of Appeal of Florida, Fifth District.
June 3, 1981.
Rehearing Denied June 30, 1981.
*77 Julius G. Petruska, Orlando, for appellant.
Lawrence D. Johnson of Peacock & Johnson, Orlando, for appellee.
COWART, Judge.
Appellee was the wife of appellant and the step-mother of appellant's six children by a former marriage. The trial judge found both parties "fit and proper as parents" but awarded the step-mother custody of her husband's 13 year old son. The final judgment of dissolution also awarded the wife the marital home as lump sum alimony. Both decisions are challenged on this appeal.
Appellant argues that since he is the natural father, and the trial judge specifically found him a fit and proper parent, it was an abuse of discretion to deny him custody. Appellant cites Hernandez v. Thomas, 50 Fla. 522, 39 So. 641 (1905), Foster v. Sharp, 114 So.2d 373 (Fla. 3d DCA 1959), Besade v. Besade, 312 So.2d 484 (Fla. 3d DCA 1975), and Behn v. Timmons, 345 So.2d 388 (Fla. 1st DCA 1977), for applications of the proposition that, absent a finding of unfitness, a natural parent should have custody of a child as against others. Appellee cites Pitman v. Pitman, 153 Fla. 434, 14 So.2d 671 (1943), Cone v. Cone, 62 So.2d 907 (Fla. 1953), Shepard v. Shepard, 87 So.2d 807 (Fla. 1956), DeGroot v. Fuller, 210 So.2d 244 (Fla. 2d DCA 1968), Heffernan v. Goldman, 256 So.2d 522 (Fla. 4th DCA), cert. denied, 256 So.2d 6 (Fla. 1971), Brannan v. Brannan, 284 So.2d 701 (Fla. 1st DCA 1973), Forman v. Forman, 315 So.2d 9 (Fla. 3d DCA 1975), and Scott v. Singleton, 378 So.2d 885 (Fla. 1st DCA 1979), cert. denied, 388 So.2d 1118 (Fla. 1980), for examples of where the award of custody of a child to persons other than a natural parent was in the best interests of the child. All of the cases cited by both parties can be factually distinguished in certain relevant details from this case. In Hernandez the grandmother was not entirely fit while here the step-mother was found fit. In Foster the natural mother, in poor health, temporarily surrendered custody of one child to a sister-in-law and the court returned the child to its mother contrary to the preference of the child. In Besade some of the prospective custodians were never before the court. In Behn the maternal grandmother had not had long actual custody, but here the step-mother has shared actual custody since the child was a few months old. In Pitman, Cone, Heffernan, Brannan, and Scott, the child had not actually resided with its natural parent for some time unlike here where the natural father has continuously shared actual custody. In Forman a natural parent was awarded joint custody along with grandparents, thus custody was not given exclusively to others as against a natural parent. In Shepard and DeGroot the fitness of the natural parent was in question.
Rather than distinguishing the particular facts of this case from the cases cited by appellant, or stressing the aspects of the cases cited by appellee that are consistent with our conclusion, or giving great weight to some factors, such as the child's strong preference in this case, we hold that the ultimate test in determining the custody award should be the best interests and welfare of the child as contemplated by section 61.13(3), Florida Statutes (1979), and that when the trial judge's discretion relating to custody has been exercised in a reasonable manner[1] it should not be disturbed on appeal. It is true, as is stated in the cases cited by appellant, that courts should not lightly encroach on the rights of natural parents to have the custody, care and control of minor children, especially when such parents are found to be fit. We are very sensitive to those rights. However, the facts of this case illustrate that there can be *78 conflicts between what is reasonably perceived by a trial judge to be in the child's best interests and a natural parent's preferential right to custody of a child. This same problem is presented in many adoption cases.[2]
In this case the child's natural mother died as the result of complications from the birth of this child. Within months appellant married appellee. Appellee so completely cared for appellant's children that this child was unaware that appellee was not his natural mother until he was 10 or more years of age. The child expressed great love and devotion toward his step-mother, obviously his psychological parent, and felt like he never had a father because his father was often away from home, was frequently intoxicated, and physically abused and blamed this child for the death of his natural mother, telling the child on one occasion "your mother died 13 years ago because of you and don't you ever forget it." In finding the father a fit and proper parent the trial judge was charitable. We do not hold the trial judge in error in making this finding, but everybody needs to be loved and not rejected and this case demonstrates that in a given case a child can be better loved and cared for by a "stranger" than by its own fit natural parent.[3] We sustain the trial judge's decision awarding custody of this child to its step-mother.
Both parties have previously been employed as teachers and the wife's earnings have averaged about 92% of that of the husband. The husband has the legal obligation to support his children while the wife has no dependants and no comparable legal duty to others. The home is the only major asset of the parties. It was acquired substantially from the joint efforts of the parties during the marriage and is jointly owned. At the time of the divorce it was worth $65,000 to $68,000, subject to a mortgage of $9,000 to $10,000. Canakaris v. Canakaris, 382 So.2d 1197 (Fla. 1980), was originally dated January 31, 1980, but was not widely published until it was clarified on rehearing and issued March 27, 1980. This case was tried on February 19, 1980, and the final judgment is dated March 7, 1980; therefore, the Canakaris opinion was not available to the trial judge. Canakaris, after distinguishing and limiting the term "special equity" in domestic relations actions to describe a vested equitable property interest, seems to hold that there now exists two general types or uses of lump sum alimony. The first type relates to support and occurs where the court finds from the circumstances sufficient need on the part of one spouse and sufficient ability to pay on the part of the other spouse to warrant permanent alimony and also further finds that unusual circumstances exist justifying the determination that the alimony should be in the form of a lump sum award rather than being paid periodically. The second type, or use of, lump sum alimony relates to making an equitable division of marital property.[4] As an example of the use of a lump sum alimony award to make an equitable and just distribution of property between the parties in a marriage dissolution *79 action the Supreme Court in Canakaris cites, and quotes with approval from, Brown v. Brown, 300 So.2d 719 (Fla. 1st DCA 1974), cert. dismissed, 307 So.2d 186 (Fla. 1975). In Brown the First District Court of Appeal refers to Chestnut v. Chestnut, 160 Fla. 83, 33 So.2d 730 (1948) for the proposition that basically alimony is awarded on the theory that marriage is a partnership to which the wife has made a contribution, and refers to Beard v. Beard, 262 So.2d 269 (Fla. 1st DCA 1972), and Thigpen v. Thigpen, 277 So.2d 583 (Fla. 1st DCA 1973), as examples where that court had approved trial court rulings equally dividing the material asserts of the marital venture. In Brown the court then considered the property distribution problem that is involved in the dissolution of a marital partnership when assets have been accumulated during the marriage in the name of one party whose efforts have been away from the home earning money and accumulating assets while the other party has directly contributed services as a homemaker providing for the living needs and comforts of both partners and their children. Finding that one partner had been shortchanged by an award of only rehabilitative alimony the court in Brown reversed and directed the trial court to award lump sum alimony sufficient to compensate the homemaker for her contribution to the marriage.
Even without considering the husband's obligation for child support, which, being superior to a subsequent wife's claim for alimony, reduces the husband's disposable income for purposes of comparison with the wife's income, the evidence indicates that the wife's earning ability in this case is within about eight percent of that of the husband. This and other factors relating to the need and ability test rule out alimony as such in this case and thereby eliminates the first or support type of lump sum alimony award.
When title to assets acquired during the marriage is held by one party and there are no special equities, the use of an award of lump sum alimony to make an equitable distribution may be necessary to obtain a just result. When a home is acquired jointly during the marriage and there are other assets, to award one party's interest in the home to the other as part of an equitable distribution of all of the marital assets may be proper as in Brown and Canakaris. However, where, as here, the home is substantially the only asset of value accumulated during the marriage, there are no special equities and no necessity for a lump sum alimony award for support purposes, and the home is jointly owned, there is no necessity for the application of equitable remedy of lump sum alimony in order to make an equitable and just distribution of the home. That result is achieved by the property law concepts embodied in section 689.15, Florida Statutes, which provides "in cases of estates by the entirety, the tenants, upon dissolution of marriage, shall become tenants in common" and by chapter 64, Florida Statutes, which provides for partition between tenants in common. Therefore, it was error for the trial court to award the wife the husband's moiety in the home as lump sum alimony.[5] In this case both parties planned to leave this state after the dissolution and there was no need or request for the exclusive use of the home as an element of child support. The record on appeal indicates in a post-judgment motion that appellee may have been forced, in order to prevent loss of the home by foreclosure, to personally borrow funds which were used to discharge the mortgage on the home. Upon remand in this cause or in any partition action she will be entitled to an opportunity to assert a "special equity" in the nature of an equitable lien against the husband's interest in the marital home property for any such sums as she may have advanced for the benefit of his interest. Evidence of appellant's intent to live in Canada may have caused the trial judge and appellee some concern about the enforceability of the award of child support in this case. Upon remand the trial court can now consider imposing a lien on appellant's interest in the home, and the proceeds of *80 any sale thereof, to secure support for the child as permitted by section 61.13(4), Florida Statutes.
This cause is affirmed as to the custody award, reversed as to the award of lump sum alimony, and remanded for further consideration consistent with this opinion.
AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.
COBB, J., concurs.
SHARP, J., dissents in part and concurs in part with opinion.
SHARP, Judge, concurring in part and dissenting in part.
I concur with the majority on the issue of custody, but I disagree with the reversal of the lump sum alimony award.
An award of alimony should not be reversed unless the appellant demonstrates an abuse of discretion by the trial judge. Canakaris v. Canakaris, 382 So.2d 1197 (Fla. 1980); Herzog v. Herzog, 346 So.2d 56 (Fla. 1977); Shaw v. Shaw, 334 So.2d 13 (Fla. 1976). Even though property is jointly owned by a husband and wife, it is within the trial court's discretion to award the property to either as lump sum alimony. Reid v. Reid, 68 So.2d 821 (Fla. 1953); Blidner v. Blidner, 219 So.2d 749 (Fla. 3d DCA 1969). In determining the nature and amount of alimony to be awarded, the court must give due consideration to several factors. These factors include the value of the parties' estates, their earning ability, age, health, stations in life, the duration of the marriage and the conduct of the parties. Gordon v. Gordon, 335 So.2d 321 (Fla. 4th DCA 1976), cert. denied, 344 So.2d 324 (Fla. 1977) and 354 So.2d 981 (Fla. 1977).
As noted by the majority, both Patrick and Eileen Gorman were school teachers. Eileen Gorman worked during the marriage and cared for the children, enabling Patrick to attend several universities and obtain an advanced degree. This degree placed Patrick in a higher rating bracket making it possible for him to obtain a principalship and a higher salary. While Eileen does have a degree, it is not from an accredited university and she needs another year of classes before she can obtain a teaching certificate. This teaching certificate is required for teachers in the public school system. Eileen was previously a theology teacher in a private Catholic school. She testified that she could not gain reemployment in that school when the news of her divorce became known. Patrick was then working as a maintenance man earning $3.50 per hour. The record shows that he had the opportunity to obtain better paying teaching positions, but he declined to accept them. A trial judge could conclude that Patrick's reduction in income was voluntary, and not from necessity, for the purpose of awarding lump sum alimony. Hausman v. Hausman, 330 So.2d 833 (Fla. 3d DCA 1976). The evidence would certainly support such a conclusion in this case.
Because Patrick Gorman failed to demonstrate an abuse of discretion by the trial judge, I would affirm the award of lump sum alimony. Since the majority has reversed the lump sum award, on remand the lower court should also be free to consider other forms of alimony.
NOTES
[1] The "reasonableness" test is defined in Canakaris v. Canakaris, 382 So.2d 1197, 1203 (Fla. 1980).
[2] See Browning v. Favreau, 60 So.2d 186 (Fla. 1952); Steets v. Gammarino, 59 So.2d 520 (Fla. 1952).
[3] See Greenbaum and Greenbaum, In the Best Interest of the Child, 50 Fla.B.J. 532 (1976); % Muench and Levy, Psychological Parentage: A Natural Right, 13 Family L.Q. 129 (1979).
[4] A lump sum alimony award cannot, of course, be used merely to divide jointly owned property because that must be done in accordance with statutory partition proceedings. Niemann v. Niemann, 294 So.2d 415 (Fla. 4th DCA 1974), cert. dismissed, 312 So.2d 733 (Fla. 1975); Baker v. Baker, 271 So.2d 796 (Fla. 3d DCA), cert. denied, 278 So.2d 285 (Fla. 1973). Nor can an award of lump sum alimony be used as a division tool where one party has established a special equity because, if the special equity is for a dollar value arising in the nature of an equitable lien from an ungifted contribution of funds or property from a source outside the marriage relationship, such interest, being a security interest, is enforced by judicial sale as in foreclosure and not by a division of property. If, as in Ball v. Ball, 335 So.2d 5 (Fla. 1976), the special equity interest is an entitlement to legal title from the finding of a resulting trust rather than a gift, then a title transfer, not a property division, occurs.
[5] See Simpson v. Simpson, 372 So.2d 526 (Fla. 4th DCA 1979).