305 So.2d 256 (1974)
Philip P. SPENCER, Appellant,
v.
Mrs. Rochelle Terebelo SPENCER, Appellee.
Nos. 74-405, 74-406, 74-521 and 74-522.
District Court of Appeal of Florida, Third District.
December 31, 1974.
Rehearing Denied January 22, 1975.
*257 Paul E. Gifford, Miami, for appellant.
Heller & Kaplan, Miami, for appellee.
Before HENDRY, HAVERFIELD and NATHAN, JJ.
PER CURIAM.
This a consolidated appeal involving two orders, one granting permanent child custody to the appellee, the other granting appellee child support and an attorney's fee.
Some of the history of this bitter divorce controversy is recounted in two Louisiana appellate court decisions reported at 261 So.2d 702 (La. App. 1972) and 273 So.2d 605 (La. App. 1973).
For the sake of brevity, we now mention only that custody of the parties' five children, one boy and four girls, ages 16 to 9, has been divided between the mother and the father since their divorce in 1971.
The last proceeding held in Louisiana occurred on November 30, 1973, in which the appellee was held in contempt of court for refusing to return the children to the appellant after taking them for visitation.
That evening the appellee and the children boarded an airplane, together with the appellant's second wife, Barbara Spencer and her two children, and flew to Miami.
Thereafter, when appellant learned of the whereabouts of his ex-wife and his present wife (who along with the seven children were living together in a two-bedroom South Dade apartment) and his children, he filed a petition for a writ of habeas corpus in Dade County Circuit Court.
Initially, following an ex parte hearing, the trial court on January 10, 1974, ordered that permanent custody be restored to the appellant under the doctrine of comity.
Then on the morning of January 12, 1974, the appellant along with deputies of the Dade County Public Safety Department went to the apartment where the children were living after the appellee had left for work and physically attempted to retake custody and return them to Louisiana.
As the testimony of the apartment manager in this case rather graphically reveals, the children resisted these efforts, and "bedlam" broke out resulting in doors being broken, furniture being overturned, and 15-year old Harry Spencer, appellant's son, running out of the apartment in his pajamas to summon help.
*258 Eventually other police officers, attorneys and the trial judge were contacted, and it was learned that the day before, the appellee had filed an emergency counterclaim with another trial judge and had received a temporary restraining order enjoining the appellant from removing the children from this state.
The counterclaim also alleged that the appellant was an unsafe person to be caring for the children and that he had acted irrationally in recent dealings with them. Therefore, it was contended that the appellant was unfit to have custody. On the other hand, appellee contended that she was a fit and proper person to have custody.
Subsequently, a hearing was held on January 24, 1974, in which the trial judge heard testimony from all five of the children, from Barbara Spencer, from the appellee, and others.
At the conclusion of this hearing, the court entered the first order appealed making several specific findings which have been helpful in our deliberations on this case.
First, the court recognized that the principle of comity should be given consideration in cases of this nature. See, Crane v. Hayes, Fla. 1971, 253 So.2d 435; Mitchell v. Mitchell, Fla.App. 1974, 294 So.2d 44; Scarpetta v. DeMartino, Fla.App. 1971, 254 So.2d 813; Powell v. Powell, Fla.App. 1971, 242 So.2d 138; Fox v. Fox, Fla.App. 1965, 179 So.2d 103; Morris v. Kridel, Fla.App. 1965, 179 So.2d 130; State ex rel. Fox v. Webster, Fla.App. 1963, 151 So.2d 14.
However, the court held that material changes in circumstances and the best interests and welfare of the children dictated a change in the Louisiana custody award.
More specifically, the court found that the appellee's romance with a married man, one Carl Munch, which concerned the Louisiana appellate court, had ended in October, 1971, and since then she had demonstrated the moral and spiritual fitness necessary to the upbringing of minor children.
Moreover, the court found that appellee was loving and devoted to the children, and each child testified that he or she would prefer to live permanently with their mother.
The children testified that they felt their father was mean to them, that he beat them, and this testimony was corroborated by appellant's second wife, Barbara Spencer, also separated from him, who testified that appellant had a "dual personality" and that he was easily subject to rages and other irrational conduct.
Finally, the court stated, "It is the duty and obligation of the Court to make and enter such orders and decrees affecting the custody of minor children as will promote their best interest and general welfare." Thereupon the court granted to the appellee permanent custody of the children.
Appellant has raised two points in his brief attacking this order (appellate case numbers 74-405 and 406). We have carefully considered each in light of the record and the law, and we conclude that they do not present reversible error.
We have scrutinized the testimony in this case, and we think the court's findings are amply supported by competent evidence. Further, the court was completely correct in its interpretation of the law applicable to this case.
We certainly do not condone appellee's defiance of the lawful orders entered by the Louisiana courts (see also, State ex rel. Fox v. Webster, supra); however, it is clear that where both parties have submitted themselves to the jurisdiction of the courts of this state and where the children also are before the court and residing in Florida, the court has the duty to make the best interests of the children its paramount consideration.
*259 We direct our attention next to the appeal taken in case numbers 74-521 and 74-522. The appellant here challenges the court's order directing him to pay $250.00 per week as child support for the five children and a $10,000.00 attorney's fee to the wife's attorney.
The trial court conducted another hearing on child support and the attorney's fee, almost two months after the first hearing transferring custody. We have closely examined the record of this hearing.
From the record, it appears clear that the appellee now has a job from which she nets approximately $575.00 per month as take-home pay. In addition, she received $80,000.00 in Louisiana from the appellant as a community property settlement.
The appellee paid her Louisiana attorneys $21,000 from this latter sum. She also purchased a home in Louisiana for $42,500. Appellant has filed for a writ of attachment against this property in connection with an action for damages instituted in Louisiana for expenses and mental anguish allegedly sustained pursuing the appellee and the children into Florida.
At the hearing, the appellee testified that she has depleted $15,000.00 in cash which she had when she came to Florida as a result of the expense of moving. She also testified that she has paid her attorney $4,500.00 in cash and owes him $5,500.00 on a note.
The evidence presented respecting the financial status of the appellant is not entirely clear. Appellee contends it established his net worth as $325,000.00. We do not think the evidence established that as a fact.
It is undisputed that appellant's 1972 tax return established his income from his practice as an attorney in Louisiana at $14,000.00. In addition, the appellee testified that her former husband has an annual net income of $15.000.00 from rental of real property he owns.
Also, testimony was received from a CPA, related to the appellee by marriage to her cousin, that a $25,000.00 capital gains tax liability reported by the appellant in his financial affidavit indicates a total capital gain of approximately $125,000.00.
It was the court's own calculation that appellant has approximately $200,000.00 in equity in real property based upon testimony from the appellee that he had paid $37,000.00 in cash as a down payment on the property.
While we find the evidence of the husband's financial ability to pay somewhat unclear, we think it was sufficient to support the award of child support.
No citation of authority is required for the legal proposition that an award of child support is a matter resting within the broad discretion of the trial court, and it is the burden of the appellant to demonstrate a clear abuse of discretion on appeal.
We do find, however, greater difficulty with the amount awarded as an attorney's fee in this case. We agree with the appellee that the statute governing attorney's fees in cases of this nature has been altered (Fla. Stat. § 61.16, F.S.A.). An attorney's fee to the party initiating modification proceedings is now permissible. Darcy v. Darcy, Fla.App. 1973, 285 So.2d 59.
Moreover, we assume for purposes of this decision that the trial court exercised sound discretion in concluding that the wife's needs and the husband's ability justified payment by the appellant of a fee to the wife's attorney. See, Colbath v. Colbath, Fla. 1972, 268 So.2d 361.
Nevertheless, we do find this case somewhat analogous to Keena v. Keena, Fla. App. 1971, 245 So.2d 665, wherein Judge Rawls wrote as follows:
"The question of awarding an attorney's fee to be paid by the husband to *260 the wife's attorney when she has flouted the authority of a court wherein she sought affirmative relief is apparently a question of first impression in this State. The right of a wife to counsel fees is not an absolute right; it is founded upon equitable principles. Though fees which have been allowed for a wife's attorney belong to her counsel, the award of the fee is not for the benefit of her counsel, but is for the equitable objective of putting the wife on substantially even terms with her husband. The term `attorney's fees' ordinarily means money necessary to enable a spouse, generally the wife, to carry on or defend the matrimonial action. The purpose of awarding a wife['s] attorney's fees is to insure to the wife an efficient preparation of her case, and a fair and impartial trial thereof." (See, 245 So.2d 667)
In an equitable action it should not be ignored that one party flagrantly has disregarded the lawful decree of another court in a foreign jurisdiction (and has been held in contempt of court) when it comes time to assess an attorney's fee.
While in this case we do feel that an attorney's fee was justified based on the legal principles set forth by Judge Rawls above, and we think the amount awarded was not excessive, we cannot agree that appellant should be ordered to pay the full amount of his ex-wife's attorney's fee in light of the facts.
Therefore, it is our conclusion that the sum awarded as an attorney's fee against the appellant should be reduced to $5,000.00. In addition, the husband hereby is ordered to pay a fee of $750.00 to the wife's attorney for representing her in this appeal.
For the reasons stated and upon the authorities cited, the two orders appealed are affirmed in all other respects.
Affirmed as modified.