390 So.2d 53 (1980)
William KENDRICK, Appellant,
v.
Annie EVERHEART a/K/a Annie Kendrick, Dennis Everheart, and Jim Smith, Attorney General, State of Florida, Appellees.
No. 56759.
Supreme Court of Florida.
November 6, 1980.
*55 Adrienne Maidenbaum of the Legal Aid Service of Broward County, Inc., Hollywood, for appellant.
Jim Smith, Atty. Gen., and Brian E. Norton, Asst. Atty. Gen., Tallahassee, for appellee.
SUNDBERG, Chief Justice.
The general issue presented in this appeal is whether a putative father may bring an action to adjudicate his paternity either under Florida's determination of paternity statute, chapter 742, Florida Statutes (1977), or under Florida's declaratory judgment statute, chapter 86, Florida Statutes (1977). The trial court held that a putative father may not bring an action for adjudication of paternity under either chapter and dismissed the case on the pleadings. Because the trial court ruled on the constitutionality of section 742.011, Florida Statutes, we have jurisdiction pursuant to article V, section 3(b)(1), Florida Constitution.
Appellant William Kendrick filed this suit alleging that he is the father of five minor children born out of wedlock. Appellant apparently has custody of the children and has provided for their support. He seeks (a) an adjudication of paternity and amendment of the children's birth certificates and their names to reflect that he is the natural father, (b) alternative declaratory relief under chapter 86, Florida Statutes, declaring section 742.011, Florida Statutes, unconstitutional as a violation of equal protection under the United States[1] and Florida Constitutions[2] and a denial of access to the courts under the Florida Constitution,[3] and (c) a court order of child custody and child support from the natural mother. The children's mother, Annie Everheart, and her husband, Dennis Everheart, were named as defendants. Although it is not clear from the record whether Annie and Dennis Everheart are still married, it appears that they were married at the time of the birth of at least two of these children, both of whose birth certificates name Dennis Everheart as their father. Two of the children's birth certificates do not list a father and the paternity listing on the birth certificate of the fifth child is not alleged or otherwise reflected in the record. Both Annie and Dennis Everheart admit that appellant is the natural father of the children listed in appellant's complaint.[4] Since appellant challenged the constitutionality of section 742.011, Florida Statutes, the state, acting through the Attorney General, intervened in the case pursuant to section 86.091, Florida Statutes,[5] to defend the constitutionality of the challenged statute.
Upon the state's motion, the trial court dismissed appellant's action on the pleadings. The trial court held that Kendrick did not state a legal cause of action under section 742.011, reasoning that the purpose of the paternity statute is to provide a natural mother with a judicial mechanism for obtaining child support from the natural father rather than to provide a putative father with a means to prove his own paternity. *56 The trial court also held that a putative father may not bring an action for a declaratory judgment adjudicating his paternity under chapter 86, citing Ford v. Loeffler, 363 So.2d 23 (Fla. 3d DCA 1978). The court further determined that section 742.011 is constitutional and does not deny a man equal protection of the laws nor access to the courts. The case was, therefore, dismissed without prejudice to Kendrick's right to bring another action for the relief sought under any other more appropriate statutory remedy. From the trial court's judgment dismissing the suit, Kendrick brings this appeal.
Section 742.011 of Florida's paternity act, chapter 742, provides that:
Any unmarried woman who shall be pregnant or delivered of a child may bring proceedings in the Circuit Court, in chancery, to determine the paternity of such child.
Appellant argues initially that section 742.011, as construed in Gammon v. Cobb, 335 So.2d 261 (Fla. 1976),[6] establishes a statutory classification which distinguishes between males and females by permitting a woman but not a man to bring an action to determine paternity of a child, thus being subject to scrutiny under the equal protection clause. Craig v. Boren, 429 U.S. 190, 97 S.Ct. 451, 50 L.Ed.2d 397 (1976). He points out that to withstand scrutiny under the equal protection clause, classifications by gender must serve important governmental objectives and must be substantially related to achievement of those objectives. Caban v. Mohammed, 441 U.S. 380, 99 S.Ct. 1760, 60 L.Ed.2d 297 (1979); Orr v. Orr, 440 U.S. 268, 99 S.Ct. 1102, 59 L.Ed.2d 306 (1979). The purpose of Florida's paternity statute, appellant continues, is to protect the interests of a child illegitimately conceived and to impose an obligation on the natural father to provide support. Gammon v. Cobb, supra. Appellant asserts that he is furthering the child's interests in bringing this suit for adjudication of paternity. Therefore, he argues that the classification in section 742.011 is irrational because it denies to a man, who has supported and established a familial relationship with his children, the right to be legally declared the father.
First of all, we recognize that disparate treatment of men and women who are similarly situated violates equal protection of the laws. Parham v. Hughes, 441 U.S. 347, 99 S.Ct. 1742, 60 L.Ed.2d 269 (1979); Orr v. Orr; Schlesinger v. Ballard, 419 U.S. 498, 95 S.Ct. 572, 42 L.Ed.2d 610 (1975); Reed v. Reed, 404 U.S. 71, 92 S.Ct. 251, 30 L.Ed.2d 225 (1971); In re Estate of Reed, 354 So.2d 864 (Fla. 1978); Wilcox v. Jones, 346 So.2d 1037 (Fla. 4th DCA 1977), cert. denied, 357 So.2d 188 (Fla. 1978). Thus in this suit we must determine whether men and women are in fact similarly situated with respect to the issues presented so that any gender-based distinction is substantially related to achievement of an important state interest. We shall first address appellant's argument that Florida's paternity act is unconstitutional and then address the issue of whether a putative father may obtain an adjudication of paternity under the declaratory judgment act.
We agree with the trial court that the purpose of the paternity statute, chapter 742, is to afford a basis on which a court may order child support from a man adjudicated to be the father of the illegitimate child. T.J.K. v. N.B., 237 So.2d 592 (Fla. 4th DCA 1970). The paternity statute was enacted in abrogation of the common law in order to convert the father's moral obligation to provide child support to a legal obligation and in order to relieve the public of the need to provide support for the child. Gammon v. Cobb; Mocher v. Rasmussen-Taxdal, 180 So.2d 488 (Fla. 2d DCA 1965); DeMoya v. dePena, 148 So.2d 735 (Fla. 3d DCA 1963). The determination of paternity is made only incidentally to enable achievement of the statute's purposes. A father may achieve these statutory purposes by acknowledging the child as his own *57 and by voluntarily providing financial support. He can achieve this, unlike the mother, without the need to resort to litigation. For this reason it cannot be said that the legislature in enacting chapter 742 imposed disparate treatment on men and women who are similarly situated. When men and women are not in fact similarly situated in the area covered by the legislation in question, the equal protection clause is not violated. See Parham v. Hughes and Schlesinger v. Ballard, supra. That the paternity statute does not unfairly operate against unwed fathers is further demonstrated by the fact that the statute authorizes the court in a proper case to award child custody to the father and contemplates the imposition of child support obligations on either or both parents depending on their ability and other relevant circumstances. See Brown v. Bray, 300 So.2d 668 (Fla. 1974). Thus, in protecting the welfare of minor children, chapter 742 serves an important state interest. And by providing a mother with the legal means by which she may enforce her child's support rights against the natural father, chapter 742 does not serve to deprive that father of any of his rights.
We turn next to the issue of whether appellant may bring an action for declaratory judgment to determine his paternity. The trial court below, in holding that a putative father may not bring a declaratory action, relied on Ford v. Loeffler, supra. See also Perez v. Stevens, 362 So.2d 998 (Fla. 3d DCA 1978), cert. denied, 368 So.2d 1372 (Fla.), cert. denied, 444 U.S. 837 (1979). In Ford v. Loeffler plaintiff alleged that he was the father of defendant's child and sought visitation rights. In affirming the dismissal of plaintiff's complaint, the district court stated that no precedent exists which gives a putative father the right to institute a cause of action to establish that he is the father of a child the mother denies is his. The court, noting in particular section 742.10, held that chapter 742 provides the jurisdictional basis for a court to determine paternity and pointed out that under the statute the mother alone is given the right to institute paternity proceedings. See Clarke v. Blackburn, 151 So.2d 325 (Fla. 2d DCA 1963). Since the plaintiff could not establish paternity, the court declined to consider his child visitation rights. Apparently, the trial court in this case likewise declined to pass on appellant's other claims for relief because of his failure to first establish paternity.
Appellant contends that the decision in Ford v. Loeffler fails to recognize the legitimate rights of a putative father and unconstitutionally denies him a judicial forum in which to assert those rights. In support of his argument, appellant quotes the following statement from Stanley v. Illinois, 405 U.S. 645, 652, 92 S.Ct. 1208, 1213, 31 L.Ed.2d 551 (1972): "Private interests of a man in the children he sired and raised undeniably warrants deference and absent a powerful countervailing interest, protection." Appellant contends that a putative father must be provided some legal forum within which to assert the rights articulated in Stanley and points out that other jurisdictions have specifically found a declaratory judgment to be an appropriate remedy. See Willmott v. Decker, 56 Hawaii 462, 541 P.2d 13 (1975); A.B. v. C.D., 150 Ind. App. 535, 277 N.E.2d 599 (1971); Johannesen v. Pfeiffer, 387 A.2d 1113 (Me. 1978); Dawson v. Eversberg, 257 Md. 308, 262 A.2d 729 (1970); Crane v. Battle, 62 Misc.2d 137, 307 N.Y.S.2d 355 (Fam.Ct. 1970); Slawek v. Stroh, 62 Wis.2d 295, 215 N.W.2d 9 (1974).
Whether a putative father may bring a declaratory judgment depends primarily upon the significance of the following language from section 742.10, Florida Statutes (1977):
This chapter shall be in lieu of any other proceedings provided by law for the determination of paternity and support of children born out of wedlock.
It is clear from the language of this section that chapter 742 was intended as the natural mother's exclusive legal remedy in establishing paternity and enforcing support rights on behalf of her child. We do not, however, read section 742.10 to preclude a putative father from bringing a declaratory *58 judgment action to adjudicate paternity where such adjudication is necessary to the determination of existing rights or duties between parties to an actual controversy or dispute.
In reaching this conclusion we must briefly review pertinent case law. In Gammon v. Cobb, supra, we noted that a natural mother bringing suit under chapter 742 does so in a representative capacity on behalf of her illegitimate child. Hence in bringing suit she acts merely as a trustee or conduit to receive child support funds from the natural father for the purpose of converting them into relief for the child. She cannot contract away the illegitimate child's right to support. Shinall v. Pergeorelis, 325 So.2d 431 (Fla. 1st DCA 1975); Walker v. Walker, 266 So.2d 385 (Fla. 1st DCA 1972). Nor can a statute of limitations provision constitutionally distinguish between the support rights of legitimate and illegitimate children by foreclosing the illegitimate child's future support rights from the natural father because of the failure of the mother to file a paternity suit. Department of Health & Rehabilitative Services v. West, 378 So.2d 1220 (Fla. 1979). If chapter 742 provided the exclusive means by which to establish paternity, the mother could in effect negate the illegitimate child's support rights against the natural father who does not voluntarily choose to contribute to the support of his child. We do not believe that such an incongruous result can be reconciled with the principles just stated. It would be ironic indeed if the very statute which was enacted by the legislature to advance the welfare of the illegitimate child were also used as a two-edged sword to compromise his welfare.
We do not arrive at our construction of chapter 742 based on case law alone. Other legislative enactments which reflect upon the legislative intent underlying chapter 742 support our conclusion. As noted in Department of Health & Rehabilitative Services v. West, the legislature has recently declared it to be the public policy of this state that children be maintained from the resources of "responsible parents." See § 409.2551, Fla. Stat. (1977). This express statement of legislative intent militates against any finding that chapter 742, in providing the judicial means by which a mother may enforce her child's support rights against the natural father, was also intended by the legislature to limit any legal remedies otherwise available to other persons asserting support rights on behalf of the child. Moreover, if chapter 742 provided the exclusive means for determining paternity, a putative father-even one who openly acknowledged his paternity-would be able to avoid with impunity the criminal provisions of section 856.04(2), Florida Statutes (1977) (withholding child support), by virtue of the mother's failure, for whatever reason, to obtain an adjudication of paternity. We do not believe that the legislature intended such a result and, therefore, we construe the "in lieu of" language of section 742.10 to be limited in application to suits brought by a mother to enforce her child's support rights against the natural father.
Having established that nothing in the language or intent of the paternity act prevents a putative father from obtaining an adjudication of paternity, we turn next to the question of whether this adjudication may be obtained under the declaratory judgment act. The jurisdictional section of the declaratory judgment act provides the following:
86.011 Jurisdiction of circuit court.-The circuit courts have jurisdiction to declare rights, status and other equitable or legal relations whether or not further relief is or could be claimed. No action or procedure is open to objection on the ground that a declaratory judgment is demanded. The court's declaration may be either affirmative or negative in form and effect and such declaration has the force and effect of a final judgment. The court may render declaratory judgments on the existence, or nonexistence:
(1) Of any immunity, power, privilege or right; or
(2) Of any fact upon which the existence or nonexistence of such immunity, power, privilege or right does or may depend, whether such immunity, power, privilege or right now exists or will arise *59 in the future. Any person seeking a declaratory judgment may also demand additional, alternative, coercive, subsequent or supplemental relief in the same action.
In May v. Holley, 59 So.2d 636 (Fla. 1952), this Court noted with respect to this provision that it would be difficult to find language which would express a broader scope of jurisdiction. We stated that unless we are to deny the power of the legislature to enact the statute we must give full force to its language, subject only to the constitutional limits upon the exercise of judicial power. Those constitutional limits were stated in the following passage:
Before any proceeding for declaratory relief should be entertained it should be clearly made to appear that there is a bona fide, actual, present practical need for the declaration; that the declaration should deal with a present, ascertained or ascertainable state of facts or present controversy as to a state of facts; that some immunity, power, privilege or right of the complaining party is dependent upon the facts or the law applicable to the facts; that there is some person or persons who have, or reasonably may have an actual, present, adverse and antagonistic interest in the subject matter, either in fact or law; that the antagonistic and adverse interest are all before the court by proper process or class representation and that the relief sought is not merely the giving of legal advice by the courts or the answer to questions propounded from curiosity. These elements are necessary in order to maintain the status of the proceeding as being judicial in nature and therefore within the constitutional powers of the courts.
Id. at 639. See also Williams v. Howard, 329 So.2d 277, 282 (Fla. 1976). When the above-stated elements are shown to exist there is almost no limit to the number and types of cases that may be heard under this statute, May v. Holley, provided some useful purpose will be served by declaratory relief, Mountain v. National Airlines, Inc., 75 So.2d 574 (Fla. 1959).
The fact there is no specific precedent on the same fact situation is not by itself reason to deny the invocation of declaratory judgment relief. For example, in Bell v. Associated Independents, Inc., 143 So.2d 904 (Fla. 2d DCA 1962), the court held that the declaratory judgment act was available to decide questions arising out of an arbitration clause despite the lack of a Florida precedent. As long ago as 1930 this Court stated that the factual situations giving rise to a proper action for declaratory relief were multiplying to such an extent as to render any list of them of little practical future use. See Sheldon v. Powell, 99 Fla. 782, 790, 128 So. 258, 262 (1930). Furthermore, the legislature itself has expressly stated its intent that the declaratory judgment act be liberally construed to settle and afford relief from insecurity and uncertainty with respect to rights, status and other equitable or legal relations. See § 86.101, Fla. Stat. (1977). Thus, the declaratory judgment act should be flexibly employed to permit relief where technical or social changes have placed in doubt one's rights, immunities, status or privileges. Ready v. Safeway Rock Co., 157 Fla. 27, 24 So.2d 808 (1946).[7] We conclude that nothing within the language or intent of the declaratory judgment act precludes a declaration of paternity.
Our decision today permitting this unwed father to bring a declaratory judgment action for determination of paternity contains no novel propositions of law. This Court has already observed the fact that judicial determinations of paternity occur in contexts other than in a paternity proceeding brought under chapter 742. See the discussion in Gammon v. Cobb, 335 So.2d at 265-67. A paternity determination has been permitted in these other contexts where it was a necessary incident to the adjudication of the ultimate relief sought in the particular proceeding involved. Cf. Knauer v. Barnett, *60 360 So.2d 399 (Fla. 1978). Here appellant is seeking to establish his paternity incident to his claims for child custody, child support and amendment of certain of the children's birth certificates. He should not be denied a forum within which to adjudicate these claims on a "Catch-22" rationale that he cannot first judicially establish paternity. Through a determination of paternity, appellant may establish a relationship other than that of stranger to the child. Such a determination is necessary if the trial court is to properly decide what is in the best interest of the child in awarding legal custody.[8] A determination that appellant has legal custody of the children is in turn necessary for appellant to have standing to assert child support rights on their behalf against the natural mother.[9] Finally, a judicial determination of paternity will presumably enable appellant to obtain an amendment of those birth certificates which allegedly list the wrong father.[10]
With regard to a putative father's general standing to assert an interest in or on behalf of his illegitimate children, we add one further comment. Because of dissimilarities in their circumstances, policy considerations and problems of proof, a putative father of an illegitimate child has historically not been accorded all the parental rights which are enjoyed by the natural mother and a married father. Conversely, the putative father has not always shared the same parental responsibilities which are imposed on the natural mother and the married father. As in the past, the law will in the future continue to develop to reflect the changing demands, needs and perceptions of a dynamic society. The fact remains, however, that the unwed father is not in all respects similarly situated with the unwed mother or the married father. This fact constitutionally permits the state to distinguish between them when the state does so on a basis realistically related to the differences in their situations. See Parham v. Hughes, supra. As a consequence of the differences in their situations, the unwed father is required to show that he has manifested a substantial concern for the welfare of his illegitimate child before he may be accorded standing to assert an interest with respect to that child. Compare Caban v. Mohammed, supra, and In Interest of Baby Boy S., 349 So.2d 774 (Fla. 2d DCA 1977), with Quilloin v. Walcott, 434 U.S. 246, 98 S.Ct. 549, 54 L.Ed.2d 511 (1978), and Department of Health & Rehabilitative *61 Services v. Herzog, 317 So.2d 865 (Fla. 2d DCA 1975). In this case appellant has apparently established a familial relationship with his illegitimate children by raising and supporting them. In doing so he has manifested a substantial and continuing concern for the welfare of his children. As a result, we conclude that he has standing to bring this suit.
For the foregoing reasons we hold that a putative father who has shown a substantial interest in his illegitimate offspring may bring a declaratory judgment suit to adjudicate his paternity where that adjudication is necessary to the assertion of some present right or interest against the party sued. Accordingly, we affirm that portion of the trial court's final order upholding the constitutionally of chapter 742, Florida Statutes (1977), and reverse the portion of the final order denying appellant the right to bring a declaratory judgment suit to determine his paternity insofar as it is incident to the claims asserted against the defendants. To the extent that Ford v. Loeffler, is inconsistent with this decision, it is disapproved. This case is remanded to the trial court for proceedings not inconsistent with this decision.
Affirmed in part and reversed in part.
It is so ordered.
ADKINS, OVERTON, ENGLAND, ALDERMAN and McDONALD, JJ., concur.
BOYD, J., concurs in part and dissents in part with an opinion.
BOYD, Justice, concurring in part and dissenting in part.
In concur in the result of the majority opinion insofar as it assures the appellant a judicial forum in which to establish that he is the father of the children in his care. I feel compelled, however, to express the dissenting view that section 742.011, Florida Statutes (1977), should be construed to allow a natural parent, whether a mother or a father, to bring an action to determine the paternity of children.
The purpose of proceedings for the determination of paternity, as the majority correctly acknowledges, is to impose a support obligation on the father of illegitimate children. To this end the mother, typically the person with custody of and responsibility for the child, is authorized by statute to bring the action. We must recognize that it will sometimes be the father, rather than the mother, who has custody and is caring for the child. The mother has a support obligation also. And there will be cases of absent mothers in which custodial fathers need the help of the courts to enforce that obligation for the benefit of the children. But how can a father establish his standing to bring such an action if he cannot establish that he is the father?
Where the father of children born out of wedlock is supporting and caring for them, his personal liberty interests in his relationship with them are protected by the constitution to the same extent as are those of a mother or married parents. See Stanley v. Illinois, 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972). I believe that evenhandedness requires us to hold that chapter 742 can be invoked by either parent.
NOTES
[1] U.S.Const. Amend. XIV, § 1.
[2] Art. I, § 2, Fla. Const.
[3] Art. I, § 21, Fla. Const.
[4] Annie Everheart did not file an answer to appellant's complaint but by affidavit declared that appellant was the father of all five children. Dennis Everheart filed an answer generally denying appellant's allegations but subsequently sent a letter to appellant's attorney declaring that he was not the father of the two minor children whose birth certificates named him as their father.
[5] Section 86.091, Florida Statutes (1977), provides in pertinent part:

If the statute, charter, ordinance, or franchise is alleged to be unconstitutional, the Attorney General or the State Attorney of the judicial circuit in which the action is pending shall be served with a copy of the complaint and be entitled to be heard.
[6] In Gammon v. Cobb, we held unconstitutional that portion of section 742.011 which limits paternity suits to women who are unmarried on the ground that it violated the equal protection clauses of the state and federal constitutions.
[7] For an exhaustive discussion of jurisdiction under Florida's declaratory judgment act see Dickson, Declaratory Judgments in Florida: Jurisdiction and Judicial Discretion, 27 U. of Miami L.Rev. 47 (1972).
[8] The court has an affirmative responsibility to consider and protect the interests of the child who is before the court when entering an order in matters which will affect him. See In re Brock, 157 Fla. 291, 25 So.2d 659 (1946); Porter v. Porter, 60 Fla. 407, 53 So. 546 (1910); Spencer v. Spencer, 305 So.2d 256 (Fla. 3d DCA 1974); In the Interest of R.L.G., 274 So.2d 4 (Fla. 4th DCA 1973); Tom v. State, 153 So.2d 334 (Fla. 2d DCA 1963). Although section 744.301(1), Florida Statutes (1977), names the natural mother of an illegitimate child as its natural guardian, she may transfer her guardianship rights to another person provided it is in the child's best interest. Marshall v. Reams, 32 Fla. 499, 14 So. 95 (1893). In considering what is in the best interest of the child, the love and devotion of a natural parent is an important factor. Stanley v. Illinois, 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972); Behn v. Timmons, 345 So.2d 388 (Fla. 1st DCA 1977). See also Bourn v. Hinsey, 134 Fla. 404, 416, 183 So. 614, 619 (1938) (Buford, J., concurring specially).
[9] Cf. Brown v. Bray, 300 So.2d 668 (Fla. 1974); Engle v. Engle, 323 So.2d 658 (Fla. 3d DCA 1975); Brannan v. Brannan, 284 So.2d 701 (Fla. 1st DCA 1973). Defendant Annie Everheart has not contested appellant's claim for contribution to child support and a default was entered against her. Accordingly, if on remand of this case to the trial court judgment is entered on the default, the court may, in its capacity as a court of equity and ultimate guardian of infants, see, e.g., Brown v. Ripley, 119 So.2d 712 (Fla. 1st DCA 1960), order such child support payments as are fair and equitable under the circumstances. The trial court may order additional investigation or take further evidence as it deems necessary. See Fla.R.Civ.P. 1.500(e).
[10] We do not mean to imply that a judicial determination of paternity is necessarily a prerequisite to amendment of the birth certificates. The scanty record before us does not reveal whether appellant made any attempt based on his acknowledgement of paternity to seek an administrative remedy against the state registrar for vital statistics of the Department of Health and Rehabilitative Services, which office maintains birth certificate records. See ch. 382, Fla. Stat. (1977).