WARNER, J.
Appellant, the biological father of the child, G.H., appeals the trial court’s dismissal of his petition to establish paternity on the ground that G.H. was born during the mother’s marriage to another man, thus raising the presumption of legitimacy for G.H. Appellant claims, however, that he is entitled to an evidentiary hearing to determine his standing to bring this petition. We agree and reverse.
The mother of the child, N.H., was married to E.R. at the birth of her child, G.H., in March 2009, although E.R. is not listed as the father of G.H. on the birth certificate. Instead, the certificate states “mother refuses information on husband.” Because G.H. tested positive for marijuana and cocaine at birth, he was placed in the custody of DCF, and N.H. and E.R. each signed a surrender of their parental rights as to G.H.
By November 2009 the Department filed a case plan for G.H., which acknowledged that appellant was the alleged biological father of G.H. However, the case plan indicated that appellant’s “whereabouts are unknown at this time,” and that DCF was “conducting a diligent search.” At that point, G.H. was placed in a pre-adop-tive foster home, as the mother and E.R. had signed surrenders. The case plan had a termination of parental rights and an *1178 adoption goal date of January 4, 2010. No petition for termination of parental rights was filed.
On May 28, 2010, appellant filed a verified petition to determine paternity and for related relief, claiming to be the father of G.H., born more than a year prior. In the petition, appellant alleged that he is G.H.’s biological father and that a DNA test positively identified him as such. He claimed that he: “met with the team overseeing [G.H.’s] welfare ... and the appropriate social workers and the guardian ad litem to [G.H.], to prepare a transition plan so that [G.H.] could move into [appellant’s] home and full time custody ... ”; “has been working on establishing a relationship with his child through visitation with [G.H.], as often as is practicable ... ”; has prepared a home for G.H.; has held a DCF home visit; has submitted necessary DCF paperwork for custody; and has filed paperwork with the Florida Putative Father Registry. Appellant acknowledged that N.H. and E.R. signed paperwork surrendering their parental rights on the date of G.H.’s birth and placing G.H. in DCF custody.
E.R. filed an answer to appellant’s petition, admitting that he was married to N.H. on the date of G.H.’s birth, that he is not the biological father of G.H., and that DNA evidence shows that appellant is the biological father. He does not have a relationship with the child, nor does he want one. He admitted that appellant’s petition for paternity should be granted. In November 2010, N.H. filed a motion to dismiss the Chapter 742 paternity action with prejudice, arguing that appellant cannot file a paternity action for a child born in an intact marriage and that appellant’s consent to the adoption of G.H. is not required. She also filed an affidavit attesting that appellant is the biological father of G.H. She otherwise discredited appellant, stating that he has several felony convictions, was completely unsupportive of her throughout the pregnancy, and did not come to G.H.’s birth, even though she called him and told him she was delivering. He refused to provide her with financial support.
The former foster parents, who wanted to adopt G.H., moved to intervene in the paternity proceedings, which motion was objected to by appellant, DCF, and the guardian ad litem. However, the former foster parents withdrew their motion to intervene in favor of the court ruling on the mother’s motion to dismiss the paternity proceeding.
At the hearing on the motion to dismiss, no evidence was taken. N.H.’s attorney argued that appellant lacked standing to bring the paternity suit. Appellant’s counsel argued that appellant had the right to rebut the presumption based on his efforts to establish a relationship with G.H. DCF, the guardian ad litem, and the licensed foster care agency in charge of G.H. all sided with appellant. In rebuttal, N.H.’s attorney argued that appellant was “required to show he has manifested a substantial concern for the welfare of his illegitimate child before he may be appointed standing to assert an interest with respect to that child.”
In dismissing the case with prejudice, the trial court relied on the presumption of legitimacy of G.H. because he was born during the marriage of his mother and E.R. Because of this strong presumption, the court found that a petition for paternity was not available to appellant to establish his fatherhood. Relying on Dep’t of Health & Rehabilitative Servs. v. Privette, 617 So.2d 305, 309 (Fla.1993), the court quoted:
“there must be a clear and compelling reason based primarily on the child’s best interests to overcome the presump *1179 tion of legitimacy even after the legal father is proven not to be the biological father ... [t]hus, if a test shows that [a man other than the child’s legal father] is the child’s biological father, this fact without more does not constitute grounds to grant a paternity petition.”
Appellant’s DNA test alone did not constitute grounds to grant his petition. Appellant appeals this order.
In Dep’t of Revenue ex rel. Garcia v. Iglesias, 77 So.3d 878, 879 (Fla. 4th DCA 2012) (citing Lander v. Smith, 906 So.2d 1130 (Fla. 4th DCA 2005)), we held that our standard of review was de novo. “ ‘In assessing the adequacy of the pleading of a claim, the court must accept the facts alleged therein as true and all inferences that reasonably can be drawn from those facts must be drawn in favor of the pleader.’” Lander, 906 So.2d at 1132 (quoting MEBA Med. & Benefits Plan v. Logo, 867 So.2d 1184, 1186 (Fla. 4th DCA 2004)).
Chapter 742, Florida Statutes (2010), governs determination of parentage. Section 742.011 provides the basis for the circuit court’s jurisdiction over a party:
Any woman who is pregnant or has a child, any man who has reason to believe that he is the father of a child, or any child may bring proceedings in the circuit court, in chancery, to determine the paternity of the child when paternity has not been established by law or otherwise.
(emphasis added). Chapter 742 “provides the primary jurisdiction and procedures for the determination of paternity for children born out of wedlock.” § 742.10(1), Fla. Stat.
There is a strong presumption “that a man married to the biological mother is in fact the legal father of the child. This presumption is one of the strongest rebuttable presumptions known to law and is based on the child’s interest in legitimacy and the public policy of protecting the welfare of the child.” G.T. v. Adoption of A.E.T., 725 So.2d 404, 410 (Fla. 4th DCA 1999) (citing, inter alia, Privette, 617 So.2d 305). Nevertheless, the presumption is not conclusive and may be overcome with “clear and compelling reason based primarily on the child’s best interests.” Privette, 617 So.2d at 309 (emphasis added).
In Kendrick v. Everheart, 390 So.2d 53 (Fla.1980), the supreme court carved out a means of rebutting the presumption to establish standing:
The fact remains, however, that the unwed father is not in all respects similarly situated with the unwed mother or the married father. This fact constitutionally permits the state to distinguish between them when the state does so on a basis realistically related to the differences in their situations.... As a consequence of the differences in their situations, the unwed father is required to show that he has manifested a substantial concern for the welfare of his illegitimate child before he may be accorded standing to assert an interest with respect to that child.
Id. at 60 (citations omitted) (emphasis added). We note, however, that in Kendrick, the biological father was attempting to assert his rights against the legal father, and the record was not clear as to whether the mother and legal father were still married.
Very recently, in Iglesias, the Department of Revenue filed a petition to establish paternity, naming two respondents and alleging that Iglesias was the biological father of the child, even though the mother was married to the other respondent when the child was conceived and born. 77 So.3d at 878. Iglesias filed a motion to dismiss on this basis, and the *1180 trial court “entered a form order granting the motion to dismiss without making any factual findings.” Id. at 879. The court granted the motion on the basis that the child was born during legal marriage, so the legal father was the presumed biological father. Id. On appeal, DOR argued “that the presumption of legitimacy does not need to be rebutted at the outset of a paternity action, and that the dismissal was premature,” and also that “the issues of the best interests of the child and the presumption of legitimacy should be dealt with during the proceedings.” Id. This court agreed, explaining:
The common denominator in these cases is the best interests of the child. To that end, the courts require a determination of the child’s best interests. Some circumstances require specific procedures be followed in evaluating a child’s best interests. For example, if paternity is contested, the child’s legitimacy is at issue, and the legal father has not had notice or an opportunity to be heard, the trial court is required to appoint a guardian ad litem and hear from the guardian and all the parties before proceeding.... At a minimum, the court must evaluate the best interests of the child.
Id. (citations omitted) (emphasis added).
Although the trial court questioned whether an evidentiary hearing was necessary, and the attorneys for the mother and the appellant suggested that was the case, the trial court granted the dismissal without a hearing. This was error under the foregoing authority.
The facts of this case do not appear to fit within the pattern of any of the foregoing cases, although it is closest to L.J. v. A.S., 25 So.3d 1284, 1289 (Fla. 2d DCA 2010), where the biological father brought a petition for paternity which the mother opposed, although her husband and the child’s legal father did not oppose it. Unlike Kendrick or this case, DCF was not involved in L.J. In this case, however, both the mother and the legal father have surrendered their rights to the child. Only appellant, the biological father of the child, desires to be a parent to this child, and DCF, which now has legal custody of the child, does not contest the paternity proceedings. Perhaps the court in L.J. framed this dispute the best when it said:
The child at issue here has a biological father willing, able, indeed eager, to parent and support his offspring; a legal father who apparently is not; and a mother who apparently wishes to deprive the child of a real father.... In light of Kendrick ..., we conclude the circuit court erred in dismissing L.J.’s petition with prejudice based on lack of standing as a matter of law and without a hearing to afford L.J. the opportunity to establish his standing.
Id. at 1289.
We reverse the order dismissing appellant’s petition for determination of paternity. The trial court must hold an evidentia-ry hearing to determine whether appellant has standing to bring this petition.[1] The court should evaluate all the circumstances and DCF’s position regarding the biological father in determining the father’s standing and the child’s best interests.

Reversed and remanded for further proceedings consistent with this opinion.

STEVENSON and CONNER, JJ., concur.

. The court may also wish to consider whether the mother who has surrendered her rights has any standing to object to the determination of paternity. We do not decide that issue, because it has not been raised by the parties.