NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT

In the Interest of Y.R-P., a child.                )
_____ )
                                                   )
J.R-P.,                                            )
                                                   )
                    Appellant,                     )
                                                   )
v.                                                 )      Case No. 2D16-5598
                                                   )
DEPARTMENT OF CHILDREN AND                         )
FAMILIES, GUARDIAN AD LITEM                        )
PROGRAM, M.H., and O.R.,                           )
                                                   )
                    Appellees.                     )
_____ )

Opinion filed October 4, 2017.

Appeal from the Circuit Court for
Hillsborough County; Caroline J. Tesche
Arkin, Judge.

Ita Neymotin, Regional Counsel, Second
District, and Marisa L. Gonzalez, Assistant
Regional Counsel, Bartow, for Appellant.

Pamela Jo Bondi, Attorney General,
Tallahassee, and Mary Soorus, Assistant
Attorney General, Tampa, for Appellee
Department of Children and Families.

Matthew C. Wilson, Sanford, for Appellee
Guardian ad Litem Program.

Norman A. Palumbo, Jr., Tampa, for
Appellee M.H.

Scott L. Robbins, Tampa, for Appellee O.R.

LaROSE, Chief Judge.

J.R-P. appeals a final order disestablishing his paternity. We affirm. We write, however, to address J.R-P.'s argument that the trial court improperly granted another male standing to challenge paternity under chapter 742, Florida Statutes (2014), in a dependency case.[1]

Mystery shrouds this case. It concerns a child, two men who claim to be the father, and the child's birth mother, who may have been murdered.

The child was sheltered shortly after her birth in August 2013. The child was placed with her maternal aunt, with whom she has remained throughout these proceedings. The child is in a safe and loving environment.

The child's mother and J.R-P. never married. But J.R-P. is named as the father on the child's birth certificate. Additionally, the shelter order recites that "[f]ather asserts paternity today. Court finds him to be the father based on father's testimony given in open court." Only years later would the trial court learn that shortly after the child's birth the mother told some relatives that J.R-P. likely was not the father; she also expressed concern that telling J.R-P. would make her homeless.

In September 2013, shortly after the entry of the shelter order, the Department of Children and Families ("DCF") petitioned for an adjudication of dependency under chapter 39, Florida Statutes (2013). The trial court adjudicated the child dependent. The child never lived with J.R-P. or her mother.

---

[1]This case is factually and legally complex. We commend the trial court for its thoughtful handling of the matter.

Sometime in 2014, the child's mother disappeared. In September 2014, law enforcement opened a missing person case. Later, the case was transferred to the homicide division for further investigation based on a suspicion of murder. Law enforcement considered J.R-P. to be a "person of interest" in its investigation.[2]

Pursuant to an October 2014 order, the trial court permitted J.R-P. to have at least one two-hour unsupervised visit per week with the child. Although our record contains few details, it appears that an incident occurred during one of these visits that had a profound detrimental effect on the child. Thereafter, J.R-P. continued to have some visits with the child, but in a secure setting. Incidents occurred during some of these visits that contributed to further concerns about the safety of the child while in J.R-P.'s care.

Prior to the mother's disappearance, she told some of her relatives about the child's biological father. She showed a relative the home where the child's biological father, O.R., lived. She told the relative: "If anything happens to me, the man who lives in that house is [the child's] father." After the mother disappeared, her relatives located O.R. and shared the mother's story with him. O.R. voluntarily submitted to a DNA test. The results were virtually conclusive: there was a 99.99% probability of a relationship between O.R. and the child.

In January 2015, O.R. filed several items in the dependency case that revealed his competing paternity claim. He filed a pro se motion to intervene and

---

[2]Neither J.R-P. nor anyone else had been charged with a criminal offense arising from the disappearance of the mother. Yet, the criminal investigation created concern for DCF and the child's guardian ad litem with respect to whether J.R-P. should be permitted to have unsupervised visitation with the child.

attached a document acknowledging his paternity, a copy of a "Florida Putative Father Registry Claim of Paternity," and a copy of the DNA test results. Between the summer of 2015 and January 2016, the trial court grappled with the proper procedure to use in resolving the competing paternity claims.

The trial court appointed counsel for O.R. In January 2016, counsel filed a motion to establish O.R.'s paternity and to disestablish J.R-P.'s paternity. J.R-P., through appointed counsel, moved to dismiss or strike O.R.'s motion. DCF asked the trial court to deny J.R-P.'s motion. DCF argued that O.R. should be afforded an opportunity to be heard and to assert paternity either on his own motion or through participant status in the dependency case. DCF also asserted that J.R-P. "fraudulently signed the birth certificate for the child in that he had knowledge that he was not the biological father of the child."

A "[p]articipant" in a chapter 39 shelter, dependency, or termination of parental rights proceeding

> means any person who is not a party but who should receive notice of hearings involving the child, including the actual custodian of the child, the foster parents or the legal custodian of the child, identified prospective parents, and any other person whose participation may be in the best interest of the child. . . . Participants may be granted leave by the court to be heard without the necessity of filing a motion to intervene.

§ 39.01(50), Fla. Stat. (2013). The trial court granted O.R. participant status, determined that O.R. had standing to challenge paternity, and found that it was in the

best interest of the child for O.R. to have such standing.[3]  The trial court denied J.R-P.'s motion to dismiss or strike O.R.'s motion.

The trial court conducted an evidentiary hearing on O.R.'s motion in September 2016.  DCF and the Guardian ad Litem Program supported O.R., contending that it was in the child's best interest to establish O.R.'s paternity and to disestablish J.R-P.'s paternity.  The mother's attorney appeared at the hearing, but took no position.[4]

The trial court thereafter entered the order disestablishing J.R-P.'s paternity.  Among other things, the trial court discussed section 742.18, Florida Statutes (2014), which provides the "circumstances under which a male may disestablish paternity . . . when the male is not the biological father of the child." § 742.18(1).  The trial court determined that section 742.18 was not exactly on point.  Yet, it concluded that the case presented an issue within the scope of section 742.10(4), which allows a challenge to paternity established in reliance upon "a signed voluntary acknowledgment of paternity" but "only on the basis of fraud, duress, or material mistake of fact."  The trial court "accept[ed] [J.R-P.'s] position that . . . he was operating under a material mistake of fact: his belief in his biological paternity."  The trial court declined to find that J.R-P. had committed fraud by acknowledging paternity shortly after the child's birth.

---

[3]The order on standing was not an order that allowed O.R. to intervene as a "party."  See § 39.01(51), Fla. Stat. (2013) (providing definition of "party" to be used in chapter 39 proceedings).

[4]During closing arguments, the mother's trial counsel explained that he was her lawyer and not a witness, that anything she might have said to him had the attorney-client privilege, and that he did not want to create any appellate issues.

But the trial court determined the mother's support of J.R-P.'s assertion of paternity established her fraud.

The trial court found that the child had "never lived as a family with [J.R-P.]. His parental status [was] based on nothing more than his mistaken representations and the misrepresentations of the [child's] mother." The trial court found that O.R. was

> familiar with [J.R-P.'s] tendency to commit violence and O.R. [did] not want the little girl to be placed at risk of harm. Upon learning about [the child] and her plight, [O.R.] could have chosen to ignore this child and this proceeding and allowed the chips to fall where they may. Instead, [O.R.] took action after the mother's relatives came looking for him and informed him that [the child] may be his daughter. . . . He has shown parental concern by taking the paternity test, acknowledging paternity and being tenacious in coming to court and seeking what he believes is necessary for the protection and best interest of [the child].

The trial court concluded that "[t]o continue the legal relationship and honor parental prerogatives incorrectly and fraudulently established based on nothing more than [J.R-P.'s] wishes would be detrimental to [the child] and would endanger her safety and well-being." The trial court disestablished J.R-P.'s paternity, determined that he was not a parent or party to the dependency proceeding, and dismissed him from the dependency case.

J.R-P. raises two major points on appeal. First, he contends that the trial court improperly granted O.R. standing to proceed even though J.R-P. did not wish to disestablish paternity. Second, J.R-P. maintains that fraud and material mistake of fact were not properly pleaded and not supported by the evidence. As to J.R-P.'s concern with pleading deficiencies, J.R-P. did not present that issue to the trial court and, thus, did not preserve it for our review. Further, the trial court's finding of fraud and material

- 6 -

mistake of fact is supported by competent substantial evidence.  We need say nothing more about J.R-P.'s second point.  We now address J.R-P.'s standing argument.

O.R.'s paternity challenge arose in a chapter 39 dependency case. Florida Rule of Juvenile Procedure 8.226 addresses parenthood determinations in chapter 39 cases.  See In re Amendments to Fla. Rules of Juvenile Procedure, 115 So. 3d 286, 289 (Fla. 2013) (explaining the history behind the adoption of rule 8.226 in May 2013 and establishing the effective date of the rule as July 1, 2013).  Rule 8.226(a) allows the trial court to conduct proceedings under chapter 742 "either as part of the chapter 39, Florida Statutes, proceeding or in a separate action under chapter 742, Florida Statutes."

Here, the dependency court conducted the chapter 742 proceedings as part of the chapter 39 proceeding.  Although rule 8.226 authorizes matters of paternity to be decided as part of the chapter 39 proceeding, it does not address the procedure for raising and resolving a paternity challenge such as that before us.

J.R-P. does not directly challenge the trial court's procedure to resolve the paternity challenge.  Rather, he proposes that a biological father lacks standing to disestablish another's paternity.  Relying on section 742.18, J.R-P. asserts that he is the only person who may seek to disestablish his paternity.  Section 742.18 "establishes circumstances under which a male may disestablish paternity or terminate a child support obligation when the male is not the biological father of the child."  § 742.18(1). Thus, section 742.18 provides a mechanism by which J.R-P. could have sought to disestablish paternity if he had been so inclined.

But section 742.18 does not preclude an individual "from challenging a paternity determination pursuant to s. 742.10(4)."  § 742.18(11).  Paternity established

through "a signed voluntary acknowledgment of paternity" may be challenged on the grounds of "fraud, duress, or material mistake of fact" by a "challenger." § 742.10(4). Nothing in section 742.10(4) precludes a child's biological father from proceeding as a challenger.

Early in the dependency case, J.R-P. was identified as the child's father. He asserts that his paternity was established by law through the shelter order. We do not view the shelter hearing as an adjudicatory hearing to establish J.R-P.'s paternity. Cf. Fla. R. Juv. P. 8.305(b)(2) ("The court shall determine at the [shelter] hearing the existence of probable cause to believe the child is dependent and whether the other criteria provided by law for placement in a shelter have been met."); Fla. R. Juv. P. 8.226(a) ("The court must determine the identity of all parents and prospective parents at the initial hearing in proceedings under chapter 39, Florida Statutes, as provided by law." (emphasis added)). We recognize, however, that J.R-P. asserts that his name on the birth certificate is an acknowledgment of his paternity.

But after the lapse of a sixty-day rescission period, "a signed voluntary acknowledgment of paternity shall constitute an establishment of paternity and may be challenged in court only on the basis of fraud, duress, or material mistake of fact, with the burden of proof upon the challenger." § 742.10(4). Section 742.10(4) opens an avenue for O.R. to challenge paternity. Accordingly, we reject J.R-P.'s argument that O.R. lacks standing to disestablish J.R-P.'s paternity.

J.R-P. also asserts that to establish standing a biological father must demonstrate a substantial concern for the child's welfare. Even if that is so, the record before us adequately supports O.R.'s concern for the child. Here, the trial court granted O.R. participant status. A participant in a chapter 39 shelter, dependency, or

termination of parental rights proceeding may include, among others, identified prospective parents and any other person whose participation may be in the best interest of the child. § 39.01(50). In the interlocutory order on standing, the trial court specifically found that it was "in the [c]hild's best interest to allow [O.R.] standing." The trial court did not specifically state whether it was granting O.R. participant status as an "identified prospective parent" or as "any other person whose participation may be in the best interest of the child" at that juncture in the proceedings. Either way, we conclude that in the context of a chapter 39 proceeding, the child's best interest is the appropriate standard in deciding whether a biological father has standing to challenge paternity of a child born out of wedlock as between two males who were not married to the child's mother.

Affirmed.


CRENSHAW and MORRIS, JJ., Concur.