NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT

In the Interest of M.L.H. and D.H.H.,   )
children.   )
_____)
   )
J.S.H.,   )
   )
         Appellant,   )
   )
v.   )      Case No. 2D17-5072
   )
DEPARTMENT OF CHILDREN AND,   )
FAMILIES and GUARDIAN AD LITEM   )
PROGRAM,   )
   )
         Appellees.   )
_____)

Opinion filed August 3, 2018.

Appeal from the Circuit Court for
Hillsborough County; Katherine G. Essrig,
Judge.

J.S.H., pro se.

Mary Soorus, Assistant Attorney General,
Tampa, for Appellee Department of Children
and Families.

Laura J. Lee, Appellate Counsel, Sanford,
for Appellee Guardian ad Litem Program.


SILBERMAN, Judge.

J.S.H. challenges the order denying his motion for joinder in a termination of parental rights proceeding involving twins who were sheltered at birth due to exposure to controlled substances. J.S.H. is the children's biological father, but the children's Mother was married to C.M. at the time of conception and birth. Despite the fact that neither the Mother nor C.M. has expressed any interest in raising the children, the trial court has concluded as a matter of law that J.S.H. lacks standing to assert his rights as the father. We conclude that this was error and reverse.

J.S.H. was at the hospital when the twins were born in April 2016, and he is named as the father on their birth certificates. After the children were sheltered the court appointed counsel for J.S.H. and granted him visitation. However, the Department learned that the Mother was married to C.M. at the time of conception and birth, making him the children's legal father.[1] In June 2016, the court entered an order informing J.S.H. that he was no longer a party and suspending his visitation.

In July 2016, J.S.H. filed paternity test results indicating he was the children's biological father. On August 29, 2016, J.S.H. filed a petition for determination of paternity. In the petition, J.S.H. indicated that he had filed a claim of paternity with the Putative Father Registry.[2] He asserted he had provided blankets and clothing for the children and set up a bedroom for them. He said he had attended every scheduled visitation. Finally, he noted neither the Mother nor C.M. had been involved with the children.

---

[1]See Simmonds v. Perkins, 43 Fla. L. Weekly D273, D274 (Fla. June 28, 2018); Dep't of Health & Rehab. Servs. v. Privette, 617 So. 2d 305, 307 (Fla. 1993).

[2]See § 63.062(2)(b)(1), Fla. Stat. (2015).

Meanwhile, C.M. failed to appear, and the Department filed an affidavit of diligent search. On September 19, 2016, the Department filed a petition for termination of the Mother and C.M.'s parental rights. The petition sought termination on several bases, all stemming from the legal parents' abandonment of the children.

The court addressed J.S.H.'s petition for paternity at a status conference in October 2016. The record does not contain a transcript of that hearing, and the court did not enter an order on the petition. However, in the order now before us, the court has indicated that it declared C.M. as "the legal father by virtue of the fact he was married to the mother at the time of conception and birth." The court also "found that [J.S.H.] was not a party to this case, as he had no legal standing." The court allowed counsel for J.S.H. to withdraw.

Having no final order to appeal and no court-appointed attorney, J.S.H. filed several pro se motions seeking party status, visitation, and custody. He also filed documents he believed were proof of his fitness as a parent. Finally, he filed a motion for appointment of counsel. In February 2017, the court conducted a judicial review/permanency hearing at which it considered J.S.H.'s pro se motions. Again the record does not contain a transcript of this hearing. However, the court entered an order denying J.S.H.'s pro se motions and request for appointment of counsel. In the order, the court indicated that J.S.H. had been advised by his previous attorney to pursue a judgment of paternity in family court.

J.S.H. retained counsel and filed a petition for determination of paternity in the domestic relations division (family court) in March 2017. While J.S.H.'s petition for paternity was pending in family court, the dependency court conducted an advisory

hearing to address the merits of the petition for termination. In June 2017, the dependency court entered a final judgment of termination based on the parents' failure to appear.

J.S.H. obtained a final judgment of paternity in family court in July 2017. J.S.H. immediately filed a pro se motion for reunification in dependency court.[3] He also filed a motion to compel party status. The dependency court conducted a status review on August 21, 2017. The record does not contain a transcript of this hearing, but the docket reflects that the court again advised J.S.H. he was not a party and had no legal rights. No written order was rendered.

On October 16, 2017, J.S.H. filed in the dependency court the "motion for joinder"[4] that is the subject of this appeal. The court considered the motion on November 6, 2017. As with the previous hearings, the record does not contain a transcript of this hearing. The court entered an order denying J.S.H.'s motion for joinder on November 30, 2017.

In its order, the dependency court relied on Shuler v. Guardian ad Litem Program, 17 So. 3d 333 (Fla. 5th DCA 2009), to conclude that J.S.H. had no legal rights to the children because the children were born to the Mother's intact marriage. The court also determined that J.S.H. could not assert a claim to the children after the legal parents' rights had been terminated. The court recognized that J.S.H. had obtained a final judgment of paternity from the family court but explained that, pursuant to section

_____

[3]From this point on in the proceedings, J.S.H. appeared pro se.

[4]The motion improperly requests "joinder"; the content of the motion reflects that it is actually a motion for "participant status." J.R.-P. v. Dep't of Children & Families, 228 So. 3d 628, 630 n.3 (Fla. 2d DCA 2017). However, we will refer to the motion as it is titled.

- 4 -

39.013(4), Florida Statutes (2017), orders of the dependency court take precedence over those in other civil actions.

Because the dependency court's determination of whether a putative father has standing to challenge paternity is a question of law our standard of review is de novo. Simmonds v. Perkins, 43 Fla. L. Weekly D273, D274 n.2 (Fla. June 28, 2018). There is a strong presumption of legitimacy of a child born to an intact marriage. Id. at D274; Dep't of Health & Rehab. Servs. v. Privette, 617 So. 2d 305, 308 (Fla. 1993). However, this presumption may be overcome if a putative father establishes "a clear and compelling reason based primarily on the child's best interests." Simmonds, 43 Fla. L. Weekly at D275 (quoting Privette, 617 So. 2d at 309)).

The supreme court has recently rejected the premise that the presumption of legitimacy precludes a putative biological father from challenging the paternity of a child born to an intact marriage. Simmonds, 43 Fla. L. Weekly at D275. Instead, the court reaffirmed the standard set forth in Kendrick v. Everheart, 390 So. 2d 53, 61 (Fla. 1980), for determining a putative biological father's standing to challenge the presumption of legitimacy. Simmonds, 43 Fla. L. Weekly at D275. Under the Kendrick standard, a putative biological father can establish standing in such cases by demonstrating that "he has 'manifested a substantial and continuing concern for the welfare of the children.' " Simmonds, 43 Fla. L. Weekly at D275 (quoting Kendrick, 390 So. 2d at 61).

In reaffirming this standard in Simmonds, the supreme court resolved a conflict among district courts regarding the circumstances under which a putative biological father could challenge paternity of a child born to an intact marriage. 43 Fla.

L. Weekly at D274-75.  At the time, some district courts had concluded that a putative

father had no standing to challenge the paternity of a child born to an intact marriage

when both the husband and wife objected.  Id. at D275.  One court had suggested that

the presumption of legitimacy could not be challenged under any circumstances while

another court had acknowledged that the presumption may be rebutted in some

circumstances.  Id.  However, the supreme court explained that a biological father's

standing to challenge paternity is determined by the Kendrick standard without regard to

whether the parents objected or "the applicability of the presumption of legitimacy" itself.

Simmonds, 43 Fla. L. Weekly at D275.

         In cases in which the legal parents were not unified in an objection to a

paternity challenge, this court has recognized a putative father's ability to rebut the

presumption of legitimacy.  See L.J. v. A.S., 25 So. 3d 1284, 1288-89 (Fla. 2d DCA

2010); Van Nostrand v. Olivieri, 427 So. 2d 374, 377 (Fla. 2d DCA 1983).  In so doing,

this court has relied on the Kendrick standard to determine standing.  L.J., 25 So. 3d at

1288; Van Nostrand, 427 So. 2d at 377.  In fact, this court has held that it is error to

dismiss a petition for paternity as a matter of law without affording a putative biological

father the opportunity to establish standing under Kendrick.  See L.J., 25 So. 3d at

1289.

         The Fourth District has also applied the Kendrick standard in cases

involving a challenge to paternity of a child born to an intact marriage when the legal

parents were not unified in objection.  See J.T.J. v. N.H., 84 So. 3d 1176, 1179 (Fla. 4th

DCA (2012).  In J.T.J., the court reversed an order dismissing a petition for paternity

under similar facts.  The child was born into an intact marriage, but the mother would

- 6 -

not provide information as to the legal father for the birth certificate. Id. at 1177. The child was sheltered at birth, and the Department filed a case plan with a goal of termination of parental rights. Id. at 1177-78. The putative father filed a petition for paternity in which he alleged that a DNA test established he was the biological father. Id. at 1178. He asserted that he had filed a claim with the Putative Father Registry, exercised visitation, and prepared a bedroom for the child in his home. He also said the Department had conducted a home visit and the legal parents had signed surrenders of their parental rights. Id.

The mother filed a motion to dismiss for lack of standing which the court granted. Id. The trial court concluded that, due to the strong presumption of legitimacy, the putative father did not have the right to establish paternity. Id. The Fourth District reversed. Id. at 1180. The court recognized the strong presumption of legitimacy but explained that it was not conclusive. Id. at 1179. The court held that the putative father was entitled to an evidentiary hearing to determine whether he had standing under the Kendrick standard. Id. at 1180.

The key facts in this case are quite similar to those in J.T.J., and in both cases the biological father filed a petition for paternity that was dismissed by the dependency court based on the presumption of legitimacy. There are two additional facts here that favor J.S.H.: (1) he was listed as the father on the birth certificates, and (2) neither the Mother nor the legal father challenged his standing. As with the putative father in J.T.J., J.S.H. was entitled to a hearing at which he could attempt to establish standing.

The trial court's reliance on Shuler is misplaced because Shuler has been superseded in part by Simmonds and is otherwise distinguishable. In Shuler, the putative father's attempts to participate in a dependency proceeding were denied on the basis that the child was born to an intact marriage. 17 So. 3d at 334. The mother died during the proceedings, and the court terminated the legal father's parental rights based on his failure to appear. The putative father subsequently filed a petition for paternity, but the court dismissed the petition for lack of standing. Id. at 334-35.

On appeal, the Fifth District affirmed. Id. at 336. The court stated, "[A]lthough Shuler has a finding of fact that he is T.S.'s biological father, this gained him nothing because, as the biological father of a child who was born during the mother's intact marriage, he has no legal rights." Id. The court also ruled that the putative father filed his petition for paternity too late because the legal parents' parental rights had already been terminated. The court determined that the child, having been declared adoptable, could not be declared unadoptable "when someone else then claims to be the child's biological father." Id.

The Shuler court's ruling that the putative biological father had no right to participate in termination proceedings based on the presumption of legitimacy is inconsistent with the supreme court's ruling in Simmonds. 43 Fla. L. Weekly at D275. Furthermore, the present case is distinguishable from Shuler in that it does not involve undue delay by the putative father in seeking to challenge paternity in a dependency action. The putative father in Shuler delayed filing a petition for paternity until several months after the legal parents' rights were terminated. 17 So. 3d at 336.

Conversely, J.S.H. has consistently asserted his parental rights to the children from the date of their birth. He obtained DNA results and filed a petition for paternity before the Department filed a petition for termination, but the dependency court erroneously determined that he lacked standing as a matter of law. After his court-appointed attorney withdrew, J.S.H. filed several pro se motions seeking party status that were denied. J.S.H. was told to file a paternity action in family court, and he did so. Indeed, he obtained a final judgment of paternity in family court only to be told that the dependency court's orders had precedence.

Under these circumstances we cannot say that the delay in proceedings should preclude J.S.H. from having his day in court. Cf. M.L. v. Dep't of Children & Families, 227 So. 3d 142, 146 (Fla. 4th DCA) (affirming the denial of a putative father's motion to participate in termination proceedings because he waited a year and a half to file a petition for paternity and had not yet obtained DNA test results), cert. denied, 138 S. Ct. 571 (2017). We therefore reverse the order denying J.S.H.'s motion for joinder and remand for the court to conduct an evidentiary hearing on standing and such further proceedings as may be required.

Reversed and remanded.

LUCAS and BADALAMENTI, JJ., Concur.